# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>PGX HOLDINGS, INC. *et al.,*<br><br>                    Debtors. | Chapter 11<br><br>Case No. 23-10718 (CTG)<br><br>(Jointly Administered) |
| KIRSTEN HANSEN on behalf of herself and all others similarly situated,<br><br>                    Plaintiff,<br><br>       v.<br><br>PGX HOLDINGS, INC et. al.,<br><br>                    Defendants. | Adversary Proceeding No. 23-50396 (CTG)<br><br>Related to Adv. Docket Nos. 5 and 6 |

## DEFENDANTS' OBJECTION TO
## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (Adv. D.I. 5)

Defendants PGX Holdings, Inc.; Progrexion Holdings, Inc.; Progrexion Teleservices, Inc.; Progrexion Marketing, Inc.; Progrexion ASG, Inc.; Progrexion IP, Inc.; eFolks, LLC; Creditrepair.com, Inc.; Credit.Com, Inc.; and John C. Heath, Attorney at Law PC (collectively, "Defendants"), object to *Plaintiff's Motion for Class Certification and Related Relief* [Adv. D.I. 5][1] (the "Class Certification Motion") and respond to the *Plaintiff's Brief in Support of the Class Certification and Related Relief* [Adv. D.I. 6] ("Plaintiff's Brief") as follows.

---

[1] "D.I." citations reference the main docket in Case No. 23-10718 (CTG), under which all of Defendants' chapter 11 cases are jointly administered pursuant to the *Order Directing Joint Administration of the Debtors' Related Chapter 11 Cases*. [D.I. 55]. "Adv. D. I." reference the docket in the above-captioned Adversary Proceeding No. 23-50396 (CTG).

**RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

1. On June 4, 2023 (the "Petition Date"), Defendants filed voluntary petitions under chapter 11 of the Bankruptcy Code seeking to maximize value for all stakeholders through an orderly liquidation as a going concern. *See Declaration of Chad Wallace in Support of First Day Motions* [D.I. 12] (the "Wallace Dec.").

2. The catalysts for Defendants' bankruptcy filings were an order entered against some of the Defendants in the matter styled *Bureau of Consumer Financial Protection v. Progrexion Marketing, Inc.*, Case 2:19-CV-00298-BSJ, pending before the United States District Court, District of Utah (the "Utah Court"), and Prospect Capital Corporation's refusal to fund the balance of a $30 million facility to some of the Defendants on or about March 30, 2023. *See* Wallace Dec. ¶¶ 40-41, 53.

3. These same events forced the separate Defendants to lay off approximately 900 employees in total in three waves of terminations on April 5 and 6, 2023, May 11, 2023, and June 6, 2023. Kirsten Hansen ("Plaintiff" or "Hansen"), the named Plaintiff in this adversary proceeding, was terminated on April 5, 2023, by her employer Defendant Progrexion Teleservices, Inc. On May 24, 2023, Plaintiff filed a complaint in the Utah Court against all of the Defendants, including Defendants that had never employed her, alleging violations of the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 et seq. (the "WARN Act"). On June 5, 2023 – one day after the Petition Date – Plaintiff initiated this adversary proceeding by filing an identical complaint, the *Class Action Adversary Proceeding Complaint for Violation of Warn Act 29 U.S.C. § 2101, Et Seq* [Adv. D.I. 1] (the "Complaint") in this Court.

4.      In the two months following the Petition Date, Defendants diligently pursued an orderly liquidation of their assets to maximize returns for their creditors. Four of those efforts are particularly relevant.

5.      First, on June 6, 2023, the Court entered an order granting Defendants' motion for authority to obtain post-petition financing on an interim basis [D.I. 70] (the "Interim DIP Financing Order"). The Court authorized Defendants to borrow up to $19.9 million in "new money," of which about $3 million could be used to fund a wind-down of Defendants' cases. *See* D.I. 70-1 at ¶ 6.01(s)). In exchange, the Court approved adequate protection for pre-petition secured creditors and DIP lenders, including the Defendants' covenant to meet certain milestones leading to Defendants' disposition of all their assets at a section 363 auction within sixty-five days after the Petition Date. *See* Interim DIP Order at ¶ 11.

6.      Second, on August 4, 2023, following weeks of intense negotiations between the Defendants, DIP lenders, and the Committee of Unsecured Creditors, the Court entered an order approving on a final basis the relief granted under the Interim DIP Financing Order [D.I. 332] (the "Final DIP Financing Order"). The Final DIP Financing Order also approved a significant settlement between the Defendants and the Committee requiring that by August 24, 2023, Defendants propose a chapter 11 plan of liquidation that will include a $750,000 fund to resolve legitimate litigation claims. *See* Final DIP Financing Order at D.I. 332-3.

7.      Third, on August 4, 2023, the Court entered an order granting Defendants' motion for permission to sell substantially all their assets at an auction under section 363 [D.I. 331] (the "Auction Order"). Pursuant to the Auction Order, Defendants were authorized to sell all their assets to the stalking horse bidder free and clear of liens if no other qualified bidders submitted a timely bid. *Id.* at ¶¶ 15-21. On August 14, 2023, Defendants gave notice that pursuant to the

Auction Order, no third-party qualified bidder submitted a timely bid, and thus the assets will be sold to the stalking horse bidder. *See* D.I. 356. Defendants further gave notice that objections to that sale are due by 5:00 p.m. Eastern Time on August 18, 2023. *See id*.

8. Fourth, on July 7, 2023, the Court granted Defendants' motion for entry of an order establishing bar dates for filing proof of claim and administrative expenses requests [D.I. 138] (the "Bar Date Order"). Pursuant to the Bar Date Order, on August 3, 2023, Defendants sent notice (the "Bar Date Notice") to all entities in interest that September 7, 2023, is the bar date to for everyone, including "individual persons," to file proofs of claims and applications for administrative expenses. *See* D.I. 325.

9. Plaintiff did not object to any of these four consequential motions despite having received adequate notice given that Plaintiff filed the adversary proceeding the day after the Petition Date. Nor did Plaintiff conduct discovery, or even effect service of the Complaint. Instead, on August 4, 2023, Plaintiff filed the Class Certification Motion blindly seeking class certification. *See* Adv. D.I. 5.

## ARGUMENT

10. Courts have broad discretion in determining whether class certification is appropriate. *Johnson v. Geico Cas. Co.,* 672 F. App'x 150, 157 (3d Cir. 2016). The party seeking class certification bears the burden of establishing, by a preponderance of the evidence, that the proposed class satisfies all the requirements of Rule 23(a), and at least one of the requirements described in Rule 23(b). *In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig., PNC Bank NA*, 795 F.3d 380, 384 (3d Cir. 2015). Here, the Class Certification Motion Fails because Plaintiff cannot meet this burden since (I) under Rule 23(b)(3), a class action is not a superior alternative to the forthcoming chapter 11 plan for purposes of resolving the putative class's claims, (II) under

4

Rule 23(c)(2), the putative class is not adequately defined, (III) under Rule 23(a)(2) and (a)(3), Plaintiff is not similarly situated to absent members of the putative class, and (IV) attorneys' fees are not warranted.

## I. The Class Certification Motion Fails for Lack of Superiority Under Rule 23(b)(3).

11. Plaintiff's invocation of Rule 23(b)(3) "superiority" fails because the putative class's claims can be adjudicated more efficiently through the ongoing chapter 11 process. To establish superiority under Rule 23(b)(3), Plaintiff must show by a preponderance of the evidence that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).[2] In determining superiority, the court may consider several factors, including "(B) the extent and nature of any litigation concerning the controversy already begun by or against the class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id.* at 23(b)(3)(B)-(D). Here, these factors weigh in favor of denying class certification.

12. First, with respect to Rule 23(b)(3)(B), the parties did not engage in any substantive litigation before the Petition Date because Defendants filed the above-captioned chapter 11 cases less than two weeks after Plaintiffs filed the complaint in Utah. And while Plaintiff rushed to file this adversary proceeding one day after the Petition Date, Plaintiff's sole move post-petition has been filing the present Class Certification Motion. Plaintiff has not conducted discovery, meaningfully participated in the sale or plan process despite receiving adequate notice, or attempted to resolve the class's purported grievances through the Court's alternative dispute

---

[2] *See also, In re Pattern Energy Grp. Inc.*, 2023 U.S. Dist. LEXIS 51329, *6-7 ("[w]hen plaintiff seeks to certify a class under Rule 23(b)(3), it must also show by a preponderance of the evidence that (1) common questions of law and fact predominate over questions affecting individuals, and (2) a class action is superior to other available methods") (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)).

resolution process. *See* Local Rule 7004-2 (requiring service of Local Form 110B along with the summons). Plaintiff never even effected service of process of the Complaint under Fed. Bankr. R. P. 7004. By contrast, Defendants have made significant progress in executing a prompt and orderly liquidation of their assets for the benefit of all creditors, including the putative class members. And within one week, Defendants will file a plan of reorganization that will address <u>all</u> claims against the estate. Thus, the "extent and nature of any litigation" concerning the Plaintiff's controversy favor the plan process over class certification.

13. Second, with respect to Rule 23(b)(3)(C), it is more desirable for all claims against the estate to be addressed through the plan process than to have some potentially addressed through a parallel class action. *See* Fed. R. Civ. P. 23(b)(3)(C). The plan process will afford class members the opportunity to individually weigh the relative benefits of settling their alleged claims over wasting the Defendants' limited assets litigating over alleged WARN Act claims and defenses. Treating the putative class like other creditors will also avoid confusion that will almost certainly follow class certification. For example, former employees who received the Bar Date Notice will likely be confused by Plaintiff's proposed class notice directing them to "opt out" by a different date. In sum, this factor also weighs in favor of rejecting class certification.

14. Third, with respect to Rule 23(b)(3)(D), and for similar reasons, managing a class action within the context of chapter 11 involves unique difficulties that weigh in favor of denying class certification. *See* Fed. R. Civ. P. 23(b)(3)(D). For example, given the estate's limited resources, putative class members will effectively underwrite the parallel class action at the expense of their potential recovery because the stalking horse buyer and secured lenders are not required to fund a carve out beyond that approved in the Final DIP Financing Order. That waste

could be avoided by simply including any treatment unique to the putative class members in the forthcoming plan of reorganization.

15.     In short, Plaintiff's Class Certification Motion fails because Plaintiff cannot show that a class action is superior to the chapter 11 plan process here.

## II.   The Proposed Class is not Readily Ascertainable under Rule 23(c)(2).

16.     Nor has Plaintiff proposed a class that is "currently and readily ascertainable based on objective criteria." *City Select Auto Sales, Inc. v. BMW Bank of N. Am., Inc.*, 867 F.3d 434, 439 (3d Cir. 2017). The Court "must undertake a rigorous analysis of the evidence to determine if [this] standard is met," and Plaintiff must show that "(1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Id.* Here, Plaintiff does neither.

17.     Plaintiff's proposed class is defined by a subjective criterion: whether a purported class member was terminated "in reasonable anticipation of or as the reasonably foreseeable consequence of the mass layoffs or plant closings" purportedly ordered by Defendants within 90 days of April 5, 2023. *See* Plaintiff's Brief at ¶ 8. Courts have repeatedly rejected virtually identical class definitions as too subjective because they require a determination of the thought process behind each layoff. *See e.g., Young v. Fortis Plastics, LLC*, 294 F.R.D. 128, 133 (N.D. Ind. 2013); *see also*, *Grimes v. Evergreen Rec. Vehicles, LLC,* No. 3:16-CV-472-TLS, 2016 U.S. Dist. LEXIS 171219 (N.D. Ind. Dec. 12, 2016) (redefining the class as "[a]ny and all persons who worked at or reported to a facility located at [debtor's addresses] within sixty days prior to the closing of those facilities").

18.     Moreover, Plaintiff sidesteps entirely that individual class members were employed by different Defendants. The Defendants are separate legal entities and separate "employers" whose cases have not been substantively consolidated. A critical part of the underlying potential

WARN Act liability will be whether such entities are subject to the WARN Act or whether the WARN Act was triggered by the conduct of any given Defendant. Common ownership of the businesses or common directors and/or officers alone are insufficient evidence of a single business enterprise, as defined in the WARN Act. Merely arguing that the Defendants all acted in concert, and that the named Plaintiff worked with the "C-level" of each of the Defendants, does not contradict the evidence that each entity is separate and distinct. In other words, Plaintiff has not met her burden of submitting evidence demonstrating that the separate Defendants should be treated as a single business enterprise for purposes of the WARN Act. Critically, Plaintiff has not provided the requisite additional evidence of *de facto* exercise of control by a parent corporation over all subsidiary, unity of personnel policies and personnel operations among all entities, and/or consequential interdependency of operations among all entities. Thus, Plaintiff's proposed definition of a class falls flat and fails to address this important aspect of WARN Act litigation.

19. Plaintiff also fails to provide a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition. As proposed, putative class members who fail to timely opt out of the class but who file timely proofs of claim pursuant to the Bar Date Notice could potentially argue they are not bound by any rulings in this adversary proceeding. And consequently, the Court could face dozens or hundreds of other individual actions seeking the same relief and subject to the same defenses. At minimum, Plaintiff should be required to redefine the putative class such that class members can be identified with sufficient certainty and within the context of the broader chapter 11 case.

20. In sum, the Class Certification Motion fails because the proposed class is not readily ascertainable under Rule 23(c)(2).

**III.     The Named Plaintiff is Not Similarly Situated to the Absent Class Members.**

21.    Plaintiff has not met Rule 23(a)(2)'s "commonality" or Rule 23(a)(3)'s "typicality" requirements because Plaintiff and the absent members of the putative class did not work for the same employers, nor at the same worksites.

22.    Under the WARN Act, only "an employer" with 100 or more employees must provide 60 days prior notice of the closing of, or "mass layoff" at, a "single site of employment." 29 U.S.C. §§ 2101(a)(2), 2101(a)(3), 2102; *see also*, *Johnson v. TeleSpectrum Worldwide, Inc.*, 61 F. Supp. 2d 116, 119 (D. Del. 1999).  But here, Plaintiff admits that Plaintiff was not employed by the same employers, nor at the same worksites, as the absent members of the putative class and thus Plaintiff's alleged claims differ from their claims. *See* Fed. R. Civ. P. 23(a)(3) (requiring that claims and defenses of the representative party be typical of the claims or defenses of the class).

23.    Plaintiff admits to working only at the Salt Lake City and West Valley City offices of some of the Defendants and only for Defendants PGX Holdings, Inc. and Progrexion Teleservices, Inc. *See* Complaint, Adv. D.I 1 at ¶ 9.; *see also*, *Plaintiff's Declaration in Support of the Class Certification Motion*, Adv. D.I. 6-1 ¶ 7.[3] Yet Plaintiff sued <u>all</u> Defendants for purportedly closing or conducting mass layoffs at <u>multiple</u> worksites, including some where Plaintiff never worked. *See e.g.*, Complaint, Adv. D.I 1 at ¶¶ 17, 23-25. Plaintiff has not shown that all Defendants laid off the threshold number of employees under the WARN Act, nor could Plaintiff do so because they did not.[4] Plaintiff's allegation that Defendants operated as a "common

---

[3]    Despite her allegations, Plaintiff only worked for Defendant Progrexion Teleservices, Inc.

[4]    Some of the Defendants, including PGX Holdings, Inc., Progrexion Holdings, Inc., Progrexion IP, Inc., eFolks, LLC, and Credit.com, Inc. did not lay off any employees at all within 90 days of April 5, 2023.

enterprise" is unavailing because it is conclusory and nothing in the Class Certification Motion or accompanying declarations show that Defendants were anything but independent organizations.

24. Because there are significant factual differences between the putative class members as to which Defendant entity actually employed them and at what location they worked, there are potentially significant differences as to whether WARN applies, was triggered by that employee's layoff, and as to what defenses will be applicable to each employer/employee relationship. Consequently, class certification is inappropriate under Rule 23(a)(2) and (3) for the lack of commonality and typicality.

**IV.  Plaintiff has not Shown that Plaintiff and Class Counsel are Appropriate or Entitled to Recover Attorneys' Fees.**

25. For the reasons set forth above, it is not clear from the evidence and pleadings whether Plaintiff is a proper class representative. As specifically noted, Plaintiff was employed by Progrexion Teleservices, Inc. not by any of the other Defendants, and Plaintiff only worked at two of the several locations Plaintiff has cited. Consequently, she is not representative of employees who worked at locations different than hers or for employers other than Progrexion Teleservices, Inc.

26. As to proposed class counsel, there is certainly not a lack of experience. However, the putative class is located predominantly in Utah, with other potential members in Arizona, Idaho, and Oklahoma. Proposed lead class counsel is in New York City, New York. While the world has progressed with remote telecommunication, that distance is still significant in representing a class located in the Mountain West. Furthermore, the potential attorneys' fees generated by a New York City firm is likely to be much more costly to the putative class than a firm located in the Mountain West. That would not benefit the putative class. Plaintiff should be

required to address the reasonableness of fees based on proposed class counsel's location versus the location of the putative class itself.

27. Lastly, even if Plaintiff were entitled to class certification, they are not entitled to costs and attorneys' fees incurred in preparing and filing the Class Certification Motion and its accompanying declarations. Those filings did not benefit the estate and could have been avoided had Plaintiff engaged in mediation, or at least approached Defendants about resolving their claims through the plan process.

## **CONCLUSION**

28. For the foregoing reasons, Plaintiff's Class Certification Motion fails.

*[Remainder of Page Intentionally Left Blank]*

Dated: August 18, 2023
Wilmington, Delaware

| | |
|---|---|
| */s/ Domenic E. Pacitti* | |
| **KLEHR HARRISON HARVEY BRANZBURG LLP** | **KIRKLAND & ELLIS LLP** <br> **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Domenic E. Pacitti (DE Bar No. 3989) <br> Michael W. Yurkewicz (DE Bar No. 4165) <br> 919 North Market Street, Suite 1000 <br> Wilmington, Delaware 19801 <br> Telephone: (302) 426-1189 <br> Facsimile: (302) 426-9193 <br> Email: dpacitti@klehr.com <br> myurkewicz@klehr.com | Joshua A. Sussberg, P.C. (admitted *pro hac vice*) <br> 601 Lexington Ave <br> New York, New York 10022 <br> Telephone: (212) 446-4800 <br> Facsimile: (212) 446-4900 <br> Email: joshua.sussberg@kirkland.com |
| - and - | - and - |
| Morton R. Branzburg (admitted *pro hac vice*) <br> 1835 Market Street, Suite 1400 <br> Philadelphia, Pennsylvania 19103 <br> Telephone: (215) 569-3007 <br> Facsimile: (215) 568-6603 <br> Email: mbranzburg@klehr.com | Spencer Winters (admitted *pro hac vice*) <br> Whitney C. Fogelberg (admitted *pro hac vice*) <br> Alison J. Wirtz (admitted *pro hac vice*) <br> 300 North LaSalle <br> Chicago, Illinois 60654 <br> Telephone: (312) 862-2000 <br> Facsimile: (312) 862-2200 <br> Email: spencer.winters@kirkland.com <br> whitney.fogelberg@kirkland.com <br> alison.wirtz@kirkland.com |
| *Co-Counsel to the Debtors and Debtors in Possession* | *Co-Counsel to the Debtors and Debtors in Possession* |
| | -and- |
| | **HOLLAND & HART LLP** <br> Bryan Benard (*pro hac vice* forthcoming) <br> Engels J. Tejeda (*pro hac vice* forthcoming) <br> 222 South Main Street, Suite 1200 <br> Salt Lake City, Utah 84105 <br> Telephone: (801) 799-5800 <br> Facsimile: (877) 665-1699 <br> Emails: bbenard@hollandhart.com <br> ejtejeda@hollandhart.com |
| | *Proposed Special Employment Co-Counsel to the Debtors and Debtors in Possession* |

10624741.v1