## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>PGX HOLDINGS, INC., *et al.*[1] ,<br><br>Debtors, | Chapter 11<br><br>Case No. 23-10718 (CTG)<br><br>(Jointly Administered) |
| KIRSTEN HANSEN on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PGX HOLDINGS, INC.; PROGREXION HOLDINGS, INC.; PROGREXION TELESERVICES, INC.; PROGREXION MARKETING, INC.; PROGREXION ASG, INC.; PROGREXION IP, INC,; EFOLKS, LLC; CREDITREPAIR.COM, INC.; CREDIT.COM, INC.; and JOHN C. HEATH, ATTORNEY AT LAW, PLLC,<br><br>Defendants. | Adv. Proc. No. 23-50396(CTG)<br><br><br>**Re: Adv. D.I. 5, 6, 8** |

## PLAINTIFF'S REPLY BRIEF IN SUPPORT OF
## MOTION FOR CLASS CERTIFICATION AND RELATED RELIEF

| | |
|---|---|
| **RAISNER ROUPINIAN LLP**<br>Jack A. Raisner *(pro hac vice forthcoming)*<br>René S. Roupinian *(admitted pro hac vice)*<br>270 Madison Avenue, Suite 1801<br>New York, New York 10016<br>Telephone: (212) 221-1747<br>Facsimile: (212) 221-1747<br>Email: jar@raisnerroupinian.com<br>Email: rsr@raisnerroupinian.com | Christopher D. Loizides (No. 3968)<br>**LOIZIDES, P.A.**<br>1225 King Street, Suite 800<br>Wilmington, Delaware 19801<br>Telephone: (302) 654-0248<br>Facsimile: (302) 654-0728<br>E-mail: loizides@loizides.com |

Dated: September 13, 2023

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: PGX Holdings, Inc. (2510); Credit Repair UK, Inc. (4798); Credit.com, Inc. (1580); Creditrepair.com Holdings, Inc. (7536); Creditrepair.com, Inc. (7680); eFolks Holdings, Inc. (5213); eFolks, LLC (5256); John C. Heath, Attorney at Law PC (8362); Progrexion ASG, Inc. (5153); Progrexion Holdings, Inc. (7123); Progrexion IP, Inc. (5179); Progrexion Marketing, Inc. (5073); and Progrexion Teleservices, Inc. (5110). The location of the Debtors' service address for purposes of these chapter 11 cases is: 257 East 200 South, Suite 1200, Salt Lake City, Utah 84111.

## TABLE OF CONTENTS

BACKGROUND AND SUMMARY OF THE ARGUMENT ........................................................... 1

ARGUMENT .............................................................................................................................. 2

    I.    DEFENDANTS DO NOT REBUT THE JUDICIAL CONSENSUS THAT WARN CLASS

        ADVERSARIES ARE SUPERIOR TO THE INDIVIDUAL CLAIMS PROCESS............ 2

    II.   THE PROPOSED CLASS IS READILY ASCERTAINABLE ............................................ 3

    III.  THE NAMED PLAINTIFF IS SIMILARLY SITUATED TO ABSENT CLASS

        MEMBERS ......................................................................................................................... 7

    IV.  CLASS COUNSEL IS ADEQUATE AND IS NOT SEEKING APPROVAL FOR

        ATTORNEYS' FEES IN THE MOTION........................................................................... 7

CONCLUSION........................................................................................................................... 8

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Grimes v. Evergreen Recreational Vehicles*,
  3:16-CV-472-JD, 2018 WL 1257237 (N.D. Ind. Mar. 12, 2018) .................................................. 3

*Grimes v. Evergreen Recreational Vehicles, LLC*,
  No. 3:16-CV-472-TLS, 2016 WL 7188171 (N.D. Ind. Dec. 12, 2016) ........................................ 6

*In re Connaught Grp., Ltd.*,
  491 B.R. 88 (Bankr. S.D.N.Y. 2013) ........................................................................................ 2

*In re CS Mining, LLC*,
  16-022095WTT, 2017 WL 11037153 (Bankr. D. Utah Dec. 20, 2017) ...................................... 8

*In re TWL Corp.*,
  712 F.3d 886 (5th Cir. 2013) ................................................................................................... 3

*Lace v. Fortis Plastics*, LLC,
  295 F.R.D. 192 (N.D. Ind. 2013) ............................................................................................ 4

*Messner v. Northshore Univ. Healthsys.*,
  669 F.3d 802 (7th Cir. 2012) ................................................................................................... 4

*Swede v. Wood-Mode, Inc.*,
  4:19-CV-00845, 2019 WL 6771742 (M.D. Pa. De. 12, 2019) ................................................. 3

*Young v. Fortis Plastics, LLC*,
  294 F.R.D. 128 (N.D. Ind. 2013) ......................................................................................... 4, 5, 7

**Statutes**

29 U.S.C. § 2102(a)(1) .................................................................................................... 6, 7

**Rules**

Bankruptcy Code and Rule 23 .................................................................................................. 3

## BACKGROUND AND SUMMARY OF THE ARGUMENT

Many of the objections to class certification lodged by Defendants PGX Holdings, Inc. ("PGX"), and its subsidiaries, Progrexion Holdings, Inc. (Progrexion Holdings"), Progrexion Teleservices, Inc. ("Progrexion Teleservices"), Progrexion Marketing, Inc. ("Progrexion Marketing"), Progrexion ASG, Inc. ("Progrexion ASG"), Progrexion IP, Inc., eFolks, LLC ("eFolks"), Creditrepair.com, Inc. ("Creditrepair.com"), Credit.Com, Inc., ("Credit.com") and John C. Heath, Attorney at Law, PLLC (Heath PC), (cumulatively, the "Defendants") are now obsolete.

Most importantly, since the filing of Defendants' *Objection to Plaintiff's Motion for Class Certification* [Adv. D.I. 8] ("Objection"), proposed Class Counsel and Defendants have engaged in informal discovery and discussed potential resolution of the WARN claims. Plaintiff will therefore not address the Objection's allegations of non-participation which were irrelevant from the start.

Defendants' remaining arguments against class certification are also without merit.

First, Defendants' "superiority" argument is a transparent attempt to undo years of bankruptcy law regarding WARN claims.  It is well-established that class adversaries benefit all stakeholders relative to the individual claims process, and Defendants offer no new reason to question that consensus.

Second, the claimed deficiencies in the proposed class definition, to the extent they are actually deficiencies, can be easily cured.  The original proposed definition is, nevertheless, objective, ascertainable and true to WARN's requirements and particularly well-suited to the circumstances here.

Defendants' other claimed deficiencies in the class definition, as well as their

commonality arguments, improperly inject merits determinations into the Rule 23 analysis.

Finally, Defendants' arguments concerning class counsel (and their fees) are premature, irrelevant to class certification and misguided.  Counsel's fees are awarded in the ordinary, appropriate Rule 23 framework regularly without any of the hesitations posed by Defendants, which could be raised in every case, but never are because they widely miss the mark.

Plaintiff's Motion for Class Certification [Adv. D.I. 5] ("Motion") should be granted.

## ARGUMENT

### I.    DEFENDANTS DO NOT REBUT THE JUDICIAL CONSENSUS THAT WARN CLASS ADVERSARIES ARE SUPERIOR TO THE INDIVIDUAL CLAIMS PROCESS

Defendants' superiority argument vaguely implies that they have put in place a "plan process" which would better serve the employees than a Rule 23 proceeding.  (Objection, ¶13).

It is not entirely clear what Defendants are referring to.  To the extent Defendants claim to have created a special process (other than the claims process) that will assess the merits of WARN claims for each former employee, no such process was unveiled in their Joint Chapter 11 Plan [D.I. 412 filed 08/24/2023].  Defendants find no authority which found debtor's "Chapter 11 process," was superior to a class action for adjudicating a class's WARN Act claims.

More likely, what Defendants mean—although they carefully avoiding saying it—is that the employees should be required to file individual proofs of claim.  (*Id.* ("treat[] the putative class like other creditors").  Defendants' euphemistic articulation of this request is understandable because they are advancing an antiquated argument which has long been rejected, as outlined in Plaintiff's opening brief [Adv. D.I. 6 at 17-20].  Sending the putative class members through the claims process does not benefit anyone—certainly not the estate. *See, e.g.*, *In re Connaught Grp., Ltd.*, 491 B.R. 88, 99–100 (Bankr. S.D.N.Y. 2013) (WARN class adversary superior to individual claims process) ("[I]f I deny the class certification and extend the bar date for the WARN Act claimants,

2

the delay may be as great or greater than if I grant the motion. … The Trust will have to examine every filed claim anyway. … If the Trust objects to all of the claims on the same basis, the objections will be consolidated…and the parties will effectively litigate the same class action.")

To the extent the estate would see any benefit, it is the very realistic prospect that "many of the claims [will] not be[] brought." *Swede v. Wood-Mode, Inc.*, 4:19-CV-00845, 2019 WL 6771742, at *3 (M.D. Pa. Dec. 12, 2019). Defendants cling to their "defenses." (Objection, ¶13). Absent counsel, it is not realistic to imagine that any employee has the time or resources to, as Defendants put it, "weigh the relative benefits of settling their alleged claims over wasting the Defendants' limit assets." (*Id.*). That is why litigants retain lawyers in our legal system and why, in the Bankruptcy Code and Rule 23, Congress found a way to pay for them to create an equitable process, not a one-sided one that takes advantage of ordinary people. It is why the Fifth Circuit majority understood the need for class counsel in a contested WARN claim in bankruptcy and the concurrence underscored its superiority to the class process. *See In re TWL Corp.*, 712 F.3d 886, 898 (5th Cir. 2013) ("[I]if defenses are to be asserted, the need for attorneys both to assert the claims and to defend against them becomes greater"); *Id.* at 903 (Graves, J., concurring) ("Since this is clearly a "negative value suit"… it only makes sense to pursue the claims as a class in an adversary proceeding.").

The class adversary proceeding is the most efficient and just way to adjudicate the employees' claims.

## II.     THE PROPOSED CLASS IS READILY ASCERTAINABLE

Defendants next point to what the court in *Grimes v. Evergreen Recreational Vehicles* called the "curable" problem in the class definition, which proposed Class Counsel did cure in that case and can readily cure here. No. 3:16-CV-472-JD, 2018 WL 1257237, at *1 (N.D. Ind. Mar. 12, 2018). But Defendants and this Court may wish to consider why retaining the Plaintiff's proposed

3

class definition may offer a real benefit in this case, whereas in *Grimes* it did not due to the different facts.

In granting class certification in *Grimes*, Judge DeGuilo identified a "minor overbreadth" of the class definition, of the sort that "do[es] not call into question the validity of the class as a whole." *Id*. (quoting *Messner v. Northshore Univ. Healthsys*., 669 F.3d 802, 826 n.15 (7th Cir. 2012)). The definition there, as here, included those terminated "within 30 days of [the announced plant closure date], or in reasonable anticipation of or as the foreseeable consequence of the mass layoffs or plant closings ordered by Defendants [on that date]." *Id*. at *4. The *Evergreen* defendants argued that words "*reasonable anticipation* of or as the *foreseeable consequence"* amounted to an improper "reli[ance] on the subjective intent (or state of mind) of the employer." *Id*. As the court had done in earlier WARN cases, the *Evergreen* court distilled the class definition to "[a]ny and all persons who worked at or reported to [certain] facility[ies]…within sixty days prior to the closing of those facilities." *Id*. *See Young v. Fortis Plastics, LLC*, 294 F.R.D. 128, 139 (N.D. Ind. 2013), *modified in part sub nom. Lace v. Fortis Plastics LLC*, No. 3:12-CV-363 JD, 2015 WL 1383806 (N.D. Ind. Mar. 24, 2015); *Lace v. Fortis Plastics*, LLC, 295 F.R.D. 192, 206 (N.D. Ind. 2013).

Proposed Class Counsel was not counsel in *Fortis* but notes that, in re-writing the class definition in *Fortis* to exclude the "reasonable anticipation…" clause, the court's stated goal was to capture "the class of people to whom notice would have been required under the WARN Act." 295 F.R.D. at 206.

Plaintiff's current-proposed class definition does precisely what Judge DeGuilio sought – it points to very people who must get a notice. WARN requires giving notice to "affected employees," 29 U.S.C. § 2102(a)(1), defined as "employees who *may reasonably be expected* to experience an employment loss *as a consequence* of a proposed plant closing or mass layoff by

4

their employer." *Id.* § 2101(a)(5) (emphasis added).  The proposed class definition (here and in *Evergreen*) does that by including the "reasonable anticipation…." clause Defendants seek to strike.   By tracking the statute it does not inject an element of subjectivity that Congress did not intend.   A "reasonable anticipation" injects objectivity, not subjectivity.

The benefit of the full clause arises when considering the time frame Congress set for counting employees to a particular plant closing.  While employment losses within a 30-day period are automatically included in a "plant closing," *id.* § 2101(a)(2), even employment losses in a broader 90-day period may be aggregated "unless the employer demonstrates that the employment losses are the result of separate and distinct actions and causes." *Id.* § 2102(d).   When employee terminations continue after the initial date of a partial plant closing date, the question arises as to whether those let go over the trailing 90 days should be included in the violation. The definition's allusion to those let go as the foreseeable results of a plant closing, gives a foundation to include those with such colorable WARN claims in the class.  Again, the term "*reasonable* foreseeability provides an objective standard.

In *Evergreen*, the strict time-bound window did no harm: the facilities shut down at once. There was no issue of trailing job losses.  But the facts are different here.  Defendants kept a certain number of employees working after the mass April 5, 2023 separations.  They may well have been gradually let go over the following three months.  Having those employees in the class so they can prove that "the shutdown result[ed] in an employment loss" as to them makes sense. *Id.* § 2101(a)(2).

Defendants' second supposed deficiency in the class definition is that is encompasses multiple entities alleged to be a WARN "single employer." (Objection, ¶18).  Defendants cite no authority for the proposition that a plaintiff must *prove* single employer liability to earn class certification.  Indeed, both *Evergreen* and *Young* involved single employer allegations, yet neither

5

the defendants there nor the court objected to class certification on this ground.  If Defendants seriously contend the single site allegations are unworthy of merit, they could have moved to dismiss the complaint as the defendants did in *Grimes*.  *See Grimes v. Evergreen Recreational Vehicles, LLC*, No. 3:16-CV-472-TLS, 2016 WL 7188171, at *1 (N.D. Ind. Dec. 12, 2016) (finding the single employer allegations sufficient to withstand Rule 12(b)(6)).  But Defendants did not, and their skepticism about the single employer claims carries no weight.

Of course, there is no such authority for Defendants' claimed standard of proof, because it would blatantly violate Rule 23's mandate to avoid merits determinations, as outlined in Plaintiff's opening brief.  [D.I. 6 at 8-10].  The proposed class members suffered the same harm from the same conduct: a plant closing.  Who can be held responsible is a merits question that will affect them as a group.

Lastly, despite the virtually unbroken record of WARN class action certification by bankruptcy courts, Defendants claims the class definition is not "administratively feasible" because a putative class member could (a) file a proof of claim, but (b) fail to opt-out of the class.  (Objection, ¶19).   As an initial matter, the bar date has now passed.  The universe of potential employees in this situation is finite and can be addressed individually if need be.  There is no uncertainty caused by a Rule 23 class adversary and the section 502 claims process running side by side.  An employee has a right to opt out of the case.  If she opts out and has filed a proof of claim, she is entitled to rely on it.  If she opts out and has not filed a proof of claim, her claim will not be adjudicated.  If she does not opt out, she agrees to be bound by the class action.  The definition safeguards this by including only those "who have not filed a timely request to opt-out of the class."  This group is readily ascertainable.   For the employee in Defendants' hypothetical, who has filed a proof of claim but not opted-out, Defendants can be expected to object to her proof of claim and it will be expunged.  (Defendants' suggestion that this employee *only* wants her claim

pursued in the claims process seems unlikely: why would this employee, who is staying up-to-date with the proceedings, respond to the notice of the bar date but *ignore* the notice of the class action? The failure to opt-out would more likely be intentional.)  Defendants' suggestion that "Plaintiff should be required to redefine the putative class … within the context of the broader chapter 11 case" raises more questions than it answers.

### III.    THE NAMED PLAINTIFF IS SIMILARLY SITUATED TO ABSENT CLASS MEMBERS

Defendants argue that the presence of multiple employers and worksites negates the Plaintiff's commonality and typicality with the class.  (Objection, ¶¶ 22-24).  As noted *supra*, both *Evergreen* and *Young* (the only two WARN class certification decisions relied on Defendants' brief) involved single employer allegations, and neither found need for separate class representatives from each specific entity, or each worksite.  Requiring a plaintiff for every site whether there are two or 200 is not required for WARN.  The allegations of the Adversary Complaint and the Declaration of Kirsten Hansen establish that the broom that swept through these entities and facilities did not make any distinctions among those let go.  [Adv. D.I. 1, ¶¶ 1, 28-31 (unified termination decision); Adv. D.I. 6-1, ¶¶ 6, 10, 12-13 (unified operations among the corporate entities).]  There weren't separate dismissal terms, separation dates, or notices. Nothing that happened to the group did not happen to Ms. Hansen, and vice-versa, nothing happened to her that did not happen to the group – at least that Defendants have identified.

If, after discovery, there is any discernable reason why there need be one, the Defendants can seek to argue for a sub-class or decertify the class action.

### IV.    CLASS COUNSEL IS ADEQUATE AND IS NOT SEEKING APPROVAL FOR ATTORNEYS' FEES IN THE MOTION

Defendants question how a firm with offices in New York (and California and Georgia) can serve a class concentrated in the "Mountain West" states.  (Objection, ¶ 26).  Proposed Class

Counsel enjoys serving employees in Utah. *See, e.g.*, *In re CS Mining, LLC*, No. AP 16-022095WTT, 2017 WL 11037153 (Bankr. D. Utah, Dec. 20, 2017). Indeed, Plaintiff filed this case in Utah, as Defendants admit. Counsel would have continued the representation there, but Defendants chose to file for bankruptcy in Delaware.

Contrary to Defendants' limited understanding of class action practice in bankruptcy, proposed Class Counsel does not intend to bill the estate for preparing the class certification motion. Counsel has sought fees as a percentage of successfully obtained class fund in approximately 100% of its applications. Under those circumstances, Defendants are free to oppose class certification fees as being unearned because Counsel's filings "did not benefit the estate" – but in successfully resolved class-wide WARN adversary, those filings usually have done just that.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant the Motion.

Dated: September 13, 2023

Respectfully submitted,

By:   /s/ Christopher D. Loizides
Christopher D. Loizides (No. 3968)
**LOIZIDES, P.A.**
1225 King Street, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 654-0248
Facsimile: (302) 654-0728
E-mail: loizides@loizides.com

- and –

**RAISNER ROUPINIAN LLP**
Jack A. Raisner *(pro hac vice forthcoming)*
René S. Roupinian *(admitted pro hac vice)*
270 Madison Avenue, Suite 1801
New York, New York 10016
Telephone: (212) 221-1747
Facsimile: (212) 221-1747
Email: jar@raisnerroupinian.com

8

Email: rsr@raisnerroupinian.com

*Attorneys for Plaintiff and the putative class*