**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| PGX HOLDINGS, INC., *et al.*, | Case No. 23-10718 (CTG) |
| Debtors. [1] | (Jointly Administered) |
| KIRSTEN HANSEN on behalf of herself and all others similarly situated, | |
| Plaintiff, | Adv. Proc. No. 23-50396 (CTG) |
| v. | |
| PGX HOLDINGS, INC.; PROGREXION HOLDINGS, INC.; PROGREXION TELESERVICES, INC.; PROGREXION MARKETING, INC.; PROGREXION ASG, INC.; PROGREXION IP, INC.; EFOLKS, LLC; CREDITREPAIR.COM, INC.; CREDIT.COM, INC.; and JOHN C. HEATH, ATTORNEY AT LAW PC, | Re: Adv. D.I. 16, 17 and 18 |
| Defendants. | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR**
**SUMMARY JUDGMENT AND CROSS-MOTION TO DEFER RULING**

| | |
|---|---|
| Jack A. Raisner *(admitted pro hac vice)* | Christopher D. Loizides (No. 3968) |
| René S. Roupinian *(admitted pro hac vice)* | **LOIZIDES, P.A.** |
| **RAISNER ROUPINIAN LLP** | 1225 King Street, Suite 800 |
| 270 Madison Avenue, Suite 1801 | Wilmington, Delaware 19801 |
| New York, New York 10016 | Telephone: (302) 654-0248 |
| Telephone: (212) 221-1747 | Facsimile: (302) 654-0728 |
| Facsimile: (212) 221-1747 | E-mail: loizides@loizides.com |
| Email: jar@raisnerroupinian.com | |
| Email: rsr@raisnerroupinian.com | |

Dated: October 20, 2023        *Counsel to Plaintiff and the Putative Class*

# TABLE OF CONTENTS

STATEMENT OF NATURE OF CASE AND STATUS OF PROCEEDING ............................. 1

SUMMARY OF ARGUMENT ................................................................................................. 1

COUNTERSTATEMENT OF FACTS IN SUPPORT OF CROSS-MOTION TO DEFER .......... 3

ARGUMENT ......................................................................................................................... 8

    I.    LEGAL STANDARD FOR SUMMARY JUDGMENT AND THE APPLICABLE

           BURDEN OF PROOF ............................................................................................. 8

    II.   THE COURT SHOULD DEFER RULING ON THE MOTION TO ALLOW FOR DISCOVERY ............. 9

    III.  DEFENDANTS WERE NOT A LIQUIDATING FIDUCIARY ON APRIL 5, 2023 ........................... 11

    IV.  THE CAUSE OF THE EMPLOYEES' TERMINATION HAS NOT BEEN PROVEN .......................... 14

CONCLUSION ...................................................................................................................... 17

# TABLE OF AUTHORITIES

Page(s)

Cases

*Adickes v. S. H. Kress Co.*,
  398 U.S, 157 (1970)....................................................................................................... 8

*Amos Financial, LLC v. Kiebler*,
  No. 14cv0531, 2014 WL 3339586 (W.D. Pa. July 14, 2014) ...................................... 9

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)..................................................................................................... 10

*Doe v. Abington Friends School*,
  480 F.3d 252 (3d. Cir. 2007) .................................................................................... 1, 10

*In re AE Liquidation Corp*,
  522 B.R. 67 (Bank.D.Del. 2014) ........................................................................... 16, 17

*In re APA Transport Corp. Consol. Litig.*,
  541 F.3d 248 (3d Cir 2008) ................................................................................... 16, 17

*In re Deb Stores Holding LLC*,
  14-12676 (KG), 2018 WL 1577606 (Bankr. D. Del. Mar. 28, 2018)........................ 11

*In re Kiwi Int'l Air Lines, Inc.*,
  344 F.3d 311 (3d Cir. 2003) .......................................................................................... 8

*In re Official Comm. of Unsecured Creditors of United Healthcare Sys., Inc. v. United Healthcare Sys., Inc. (In re United Healthcare Sys., Inc.)*,
  200 F.3d 170 (3d Cir. 1999) ................................................................................... 12, 13

*In re Start Man Furniture LLC*,
  647 B.R. 138 (D.Del. 2022)........................................................................... 2, 10, 13, 14

*In re World Mktg. Chicago, LLC*,
  564 BR 587 (Bankr. N.D. Ill. 2017) ..................................................................... 12, 14

*IT Litig. Trust v. Alpha Analytical Labs (In re IT Grp., Inc.)*,
  331 B.R. 597 (Bankr. D. Del. 2005).............................................................................. 8

*Law v. Am. Capital Strategies,*,
  Civ. 3:05-0836, 2007 WL 221671 (M.D. Tenn. Jan. 26, 2007) ........................... 13, 17

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ........................................................... 10

*Pastore v. Bell Tel. Co. of Pa.*,
    24 F.3d, 508 (3d Cir. 1994) ...................................................................................................... 8

*U.S. v. Diebold, Inc.*,
    369 U.S. 654 (1962) ................................................................................................................ 8

Statutes

29 U.S.C. § 2102(b)(1) ............................................................................................. 2, 15, 16
29 U.S.C. § 2102(b)(2)(A) ................................................................................................. 3

Rules

Fed. R. Bankr. P. 7056 ....................................................................................................... 8
Fed. R. Civ. P. 56 .................................................................................................. 1, 2, 8, 10
Fed. R. Civ. P. 56(c) ......................................................................................................... 10
Fed.R.Civ. P 26 .................................................................................................................. 2
Rule 56(d) .................................................................................................................... 3, 11

Regulations

16 C.F.R. § 310.4(a)(2) ...................................................................................................... 4
20 C.F.R. §639.9(b)(1) ....................................................................................................... 3
20 C.F.R. § 639.9(a)(1) ............................................................................................. 2, 9, 17
20 C.F.R. § 639.9(b) ......................................................................................................... 15
54 FR 16042-01 ............................................................................................................... 12

## STATEMENT OF NATURE OF CASE AND STATUS OF PROCEEDING

Kirsten Hansen, on behalf of herself and all others similarly situated (the "Plaintiffs"), submits the following under Fed. R. Civ. P. 56 in opposition to the Motion for Summary Judgment (D.I. 16, 17 (the "Motion")) filed by PGX Holdings, Inc.; Progrexion Holdings, Inc.; Progrexion Teleservices, Inc.; Progrexion Marketing, Inc.; Progrexion ASG, Inc.; Progrexion IP, Inc.; eFolks, LLC; Creditrepair.com, Inc.; Credit.Com, Inc. (collectively, the "PGX Defendants"); and John C. Heath, Attorney at Law PC ("Lexington Law", and with the PGX Defendants, "Defendants"). Because Defendants' Motion is premature and Plaintiff is entitled to take discovery, Plaintiff cross-moves under Rule 56(d) to defer consideration of Defendants' Motion.

## SUMMARY OF ARGUMENT

1.      Defendants move for judgment on three factual issues: that Defendants were not required to give 60-days advanced notice of the layoffs under the (1) "faltering company," (2) "unforeseen business circumstances," or (3) "liquidating fiduciary" exceptions to the WARN Act. Defendants have not proffered a single similar case in which any of these factual findings were made prior to discovery.  This Motion must be deferred until discovery is complete.

2.      The Court should avoid a repeat of *In re Start Man*, where the U.S. District Court in Delaware reversed the Bankruptcy Court's grant of summary judgment to a WARN defendant over the plaintiffs' objection that discovery was incomplete:

> A court cannot grant summary judgment on the ground that "Plaintiffs' proffered evidence ... is tenuous," while also denying Plaintiffs discovery into questions to which the Federal Rules entitle them. *Doe v. Abington Friends School,* 480 F.3d 252, 257 (3d. Cir. 2007) ("If discovery is incomplete in any way material to a pending summary judgment motion, a district court is justified in not granting the motion.").
>
> The Opinion faults Plaintiffs for failing to produce evidence in the record creating a genuine issue of material fact casting doubt as to the cause of the layoff, but any such evidence was in the Trustee's possession, and Plaintiffs were denied the

opportunity to obtain the documents or deposition testimony necessary to test that element. Indeed, the Court has found no other decision granting summary judgment on the "unforeseeable business circumstance" defense--or any other affirmative defense under WARN--except on an evidentiary record after the close of discovery. The Bankruptcy Court's decision to deny the Cross-Motion [under Rule 56(d)] to defer ruling was an abuse of discretion. Accordingly, this Court will reverse and remand the case to allow for discovery on the merits of the "unforeseeable business circumstance" defense.

*In re Start Man Furniture, LLC*, 647 B.R. 116, 138 (D. Del. 2022).

3.      Defendants filed their motion before any scheduling order has been entered. Discovery has not commenced. The Court has not authorized discovery in this case under Fed. R. Civ. P 26, without which Plaintiff cannot seek information to evaluate Defendants' fact contentions. Defendants' motion is in all respects a veiled motion to dismiss; accordingly, Plaintiff's allegations in the Complaint must be viewed as true.

4.      Here, even without discovery, Defendants' own submissions show clearly that they are not entitled to judgment on any of these issues.  Defendants have not proved that 60 days before April 5, 2023, it was actively seeking additional capital 60 days before the layoffs, which it reasonably believed it would obtain and would avoid a plant closing, and the employer reasonably believed that giving a WARN notice to the employees would jeopardize its chances of obtaining it. 29 U.S.C. § 2102(b)(1).  20 C.F.R. § 639.9(a)(1). This mandates denial of summary judgment on the faltering company defense.

5.      The Complaint describes Defendants operating their business in as a going concern, with executives reassuring employees through early 2023 that business would continue despite its dispute with the CFPB even though behind the scenes, executives were fearing the worst outcome for the company despite trying for months to develop new income streams that would not violate the Telemarketing Services Rule (the "TSR"). This mandates denial of summary judgment on the unforeseeable business circumstances defense. § 2102(b)(2)(A); 20 C.F.R. §639.9(b)(1).

6.      When the Defendants terminated the putative class on April 5, 2023, it was operating its business as a going concern. Defendants did not file for bankruptcy until almost two months later, on June 4, 2023. (Bankr. Case No. 23-10718, D.I. 1). Defendants' own statement of undisputed facts in its moving brief (Adv. D.I. 17), and the supporting declaration of Chad Wallace (D.I. 18) state that "between April and May 2023, with the Forbearance Agreements in place, the Defendants and their advisors prepared for a chapter 11 filing" and that "[w]hile developing a framework with the existing lenders that contemplated a section 363 sale, *followed by a liquidating chapter 11 plan*. (Adv. D.I. 17 at ¶ 53) (emphasis added). Moreover, under the Interim DIP Financing Order entered on June 6, 2023 (two months *after* the April 5 terminations), the Court approved terms under which Defendants will sell their assets at a section 363 auction within 65 days *after the Petition Date.* (B.K. D.I. 70 ¶ 11). There is no evidence that as of April 5, any liquidation actions were in place. In light of facts like these, no court has held a pre-petition employer to be a liquidating fiduciary, no less 60 days prior to filing a going concern reorganization Chapter 11 proceeding.

7.      Because Defendants' Motion is premature and Plaintiff is entitled to take discovery, Plaintiff cross-moves under Rule 56(d) to defer consideration of Defendants' Motion.

## COUNTERSTATEMENT OF FACTS IN SUPPORT OF CROSS-MOTION TO DEFER

8.      The Progrexion Defendants relied on three closely affiliated entities to brand, market, and provide credit repair services: Lexington Law, Credit.Com, and CreditRepair.com. Together these entities formed and operated as a common enterprise, along with Heath PPLC. (Adv. D.I. 1, ¶ 27).

9.      The decisions to terminate Plaintiff and approximately 900 others and shut down were made by Defendants' upper-level corporate management, approved by the board of directors,

and executed by Mike DeVico and the Executive Team. (Adv. D.I. 1, ¶ 31).

10.    In the spring of 2022, Defendants' leadership became increasingly concerned that its money-making business model was being threatened.  The federal Bureau of Consumer Financial Protection ("CFPB") filed a complaint in the United States District Court for the District of Utah in 2019 (the "CFPB Action").  The complaint alleged various improper practices on the part of certain Defendant entities, one of which was the violation of the CFPB's Telemarketing Sales Rule ("TSR") found at 16 C.F.R. § 310.4(a)(2).  The CFPB alleged that certain Defendants ("CFPB Defendants") had been receiving payment of fees for their credit repair services upfront upon the sending of letters. Under the TSR, companies can only charge fees for tele-marketed credit repair services *after* the promised results have been achieved.  Once the promised results have been achieved, the provider must observe a six-month waiting period, and then provide the customer with documentation of the results.  Only when the documentation has been furnished can the provider first charge the customer for its fees.  (Adv. D.I. 1, ¶ 40).

11.    In the winter of 2021-22, the CFPB moved for partial summary judgment on the issue of the CFPB Defendants' failure to meet the TSR's precondition given the evidence that they did not wait for results when charging customers. (Adv. D.I. 1, ¶ 41).

12.    In early 2022, Defendants' chief officers became increasingly concerned that an adverse ruling by the court on CFPB's motion would jeopardize its business.  They were aware that the TSR rule ran headlong into their practice of generating revenue upfront.  They quickly sought to determine whether there was a viable path for the company to remain financially sound. They brainstormed to formulate alternative practices and business models that would not violate the TSR. Over the spring and summer of 2022, they beta-tested several concepts by arming a cohort of telemarketers with new pitches and methods to see if they could generate sufficient sales to save

4

the company. (Adv. D.I. 1, ¶ 42).

13.     After analyzing the data, over the summer and into the fall of 2022, the corporate leadership realized that none of the experiments had worked.  (Adv. D.I. 1, ¶ 43).

14.     In the fall of 2022, Defendants' equity sponsor/owner H.I.G. walked away, wanting nothing more to do with the company.  Upon information and belief, ownership was assumed by Defendants' two secured lenders, Prospect Partners and Blue Torch, and within months Blue Torch replaced Prospect Partners as the senior lender.  (Adv. D.I. 1, ¶ 44).

15.     Over the course of 2022, the awaited District Court decision on the summary judgment motion caused intensified unease.  By year's end, top management was in disarray about the path forward and dysfunctional in terms of taking constructive steps to avert disaster.  There was full awareness that the legal and financial issues were dire. "We're f***ed," some said. (Adv. D.I. 1, ¶ 45).

16.     By late-2022, reductions in the ranks of the Executive Team were taking place, leaving only four by early 2023. (Adv. D.I. 1, ¶ 46).

17.     By early 2023, the remaining Executive Team members were quietly planning for significant headcount reductions.  At the same time, they assured employees that there was nothing to fear, that the situation was under control, and that backup plans were being put in place so that, regardless of the CFPB lawsuit, the Company would endure and continue treating employees with the characteristic dignity, respect, and care. (Adv. D.I. 1, ¶ 48).

18.     On March 10, 2023, the District Court granted summary judgment on the TSR violation, finding that the undisputed facts show a violation of the TSR because "no attempt was made to comply with the express payment preconditions."   The Court did not reach the issue of damages, nor did it enjoin the Company's activities, as the CFPB had sought in its Amended

Complaint.  (Adv. D.I. 1, ¶ 49).

19.     PGX Holdings, Inc. and its subsidiaries are parties to a Second Lien Financing Agreement, dated as of July 21, 2021 (as the same may be amended, restated, supplemented or otherwise modified from time to time, including any replacement agreement therefor) (the "Financing Agreement"), with certain Lenders, under which Prospect Capital Corporation acted as collateral and administrative agent for the Lenders. (Form of Notice of Borrowing, attached as Exh. 1 to Raisner Dec.)

20.     Under Section 7.01(a)(iii) of the Financing Agreement provision, PGX was required to deliver audited financial statements, a report and an opinion by March 31, 2023 for the fiscal year ending December 31, 2022 ("FY 2022 audit"). (Letter dated March 24, 2023, attached as Exh. 2 to Raisner Dec.).

21.     The obligations of the Lenders to make loans to PGX were subject to the conditions precedent set forth in Section 5.03 of the Financing Agreement, including that immediately before and immediately after such borrowing, no Default or Event of Default shall have occurred and be continuing. (Exh. 2 to Raisner Dec.)

22.     On or about March 16, 2023, PGX notified Prospect Capital that it its auditor, KPMG US LLP, would not be able to deliver the required financial statements, report and opinion by March 31, 2023. (Exh. 2 to Raisner 2).

23.     On or about March 17, 2023, PGX Holdings, Inc. sent Prospect Capital a "Form of Notice of Borrowing," wherein it referenced that Financing Agreement in requesting a proposed loan of $30 million loan with a borrowing date of March 31, 2023 (the "Delayed Draw Term Loans"). (Exh. 1 to Raisner Dec.).

24.     On March 24, 2023, Prospect Capital sent PGX a letter stating that due to PGX's

inability to deliver the required financial statements, report and opinion by March 31, 2023, there

was a Default which would ripen into an Event of Default on March 31, 2023, and that a result, the

conditions precedent to for the $30 million will not have been, and cannot be, satisfied, and,

therefore the lenders would not be required to fund the requested Delayed Draw Term Loans. (Exh.

2 to Raisner Dec.)

25.     Defendants sought stays from the District Court and Tenth Circuit Court Appeals in

the CFPB Action, and remained unswerving in reassuring employees of their financial security

because their jobs would remain unaffected and secure.    (Adv. D.I. 1, ¶ 50).

26.     Between April 3 and April 6, both Courts denied the stay requests.  In its denial on

April 6, the District Court grounded its denial by finding that defendants had not met the burden of

showing a likelihood of success, given the TSR set preconditions for payment that defendants never

tried to meet.    (Adv. D.I. 1, ¶ 51).

27.     On April 5, 2023, with no advance notice, Defendants shut down, terminating

approximately 80% of its employees.  (Adv. D.I. 1, ¶ 52).

28.     In its First Day Motions, Defendants submitted a Declaration of Chad Wallace

explaining the need for the Court's approval of a 363 asset sale in order to maximize value to

shareholders with the risk of liquidation if a sale was undertaken promptly:

> Absent consummation of a sale on the timeline contemplated by the DIP Facility, I
> believe the Debtors' businesses would be *at significant risk of liquidating*, which
> would cost jobs, erode recoveries for creditors, and prevent hard-working customers
> from receiving these vital services.

(BK. D.I. 12, ¶ 15).

> The Debtors are singularly focused on preserving value for stakeholders enterprise-
> wide, preserving jobs, and maintaining the ability to deliver best-in-class credit
> repair services to enable their customers to maximize their participation in society.

(BK. D.I. 12, ¶ 16).

29.     On October 3, 2023, Plaintiffs served a limited set of discovery, a First Request for Production of Documents on Defendants. (Adv. D.I. 24) (Raisner Dec. ¶ 8). On that day, Plaintiffs also served third party subpoenas on Defendants' auditor KPMG US, LLP, and Prospect Capital Corporation, the collateral and administrative agent for PGX Defendants' lenders under the Second Lien Financing Agreement, dated as of July 21, 2021. (Adv. D.I. 25-27) (Raisner Dec. ¶ 10).  No documents have been produced in connection with the subpoenas or in response to Plaintiff's written discovery request to Defendants. (Raisner Dec., ¶¶ 9, 10).

30.     No depositions have been taken.  No scheduling order has been entered. No Rule 26(f) conference has occurred or other authorization from the Court to commence discovery. (Raisner Dec., ¶¶ 5-7).

## ARGUMENT

### I.     Legal Standard for Summary Judgment and the Applicable Burden of Proof

31.     Defendants' Motion must be denied if the Court finds a genuine dispute over any material fact. Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056.  In evaluating the evidence, the Court must view the inferences to be drawn from the facts in the light most favorable to the non-movant. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (same); *In re Kiwi Int'l Air Lines, Inc.*, 344 F.3d 311, 316 (3d Cir. 2003) (citation omitted) (same). *See also, Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994)("inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true.").

32.      A genuine issue of material fact exists where, given the evidence, a reasonable jury could rule in favor of the non-movant.  *IT Litig. Trust v. Alpha Analytical Labs (In re IT Grp., Inc.)*, 331 B.R. 597, 600 (Bankr. D. Del. 2005).  Under the WARN Act, the employer bears the burden

of proof that conditions for the statutory exceptions permitting the giving of less than 60 days' notice to employees have been met. 20 C.F.R. § 639.9.

33.     Here, Plaintiff alleges that as far back as 2022, Defendants were attempting alternative practices and business models to avert financial ruin from the TSR rule, showing that Defendants knew there was a real possibility the CFPB Action would harm its ability to survive. This requires denial of summary judgment to Defendants on the unforeseeable business circumstances defense. (Adv. D.I. 1, ¶¶ 40-43).  Plaintiff alleges that in the fall of 2022, Defendants' equity sponsor/owner H.I.G. walked away, management was in disarray and several executives left in the midst of disagreements the company's path forward, which undercuts Defendants' faltering company defense because a company in such disarray would not have a realistic expectation of obtaining additional capital (Adv. D.I. 1, ¶¶ 44-45). The restrictions on PGX's ability to conduct business as a result of the unfavorable rulings in the CFPB Action negate a finding that PGX would be likely to obtain additional business to forestall the April 5 terminations.  Finally, Plaintiff's allegations in the Complaint describing Defendants' reassurances to its employees that business would continue despite the unfavorable ruling in the CFPB Action (Adv. D.I. 1, ¶¶ 48, 50) and Defendants' own admissions regarding its efforts to effectuate a 363 sale instead of outright liquidation almost two months after the April 5 terminations (BK D.I. 17, ¶¶ 15, 16), weigh against a finding that Defendants were a liquidating fiduciary.

**II.     The Court Should Defer Ruling on the Motion to Allow for Discovery**

34.     While Plaintiff's allegations undercut Defendants' affirmative defenses, the Motion should be denied as premature because Plaintiffs have not had an opportunity to take discovery on the fact-intensive affirmative defenses. *Amos Financial, LLC v. Kiebler*, No. 14cv0531, 2014 WL 3339586 (W.D. Pa. July 14, 2014) (motion to dismiss or in the alternative, for summary judgment denied because "all of Defendants' arguments are premature before the close of discovery").

35.     As explained above in the introduction, a decision on the merits of fact-intensive affirmative defenses without giving the opposing party the opportunity to take discovery is reversible error:

> The WARN Act's exceptions are narrow, fact-bound defenses that ask whether the circumstances to which the employer points actually caused the layoffs. The Bankruptcy Court denied Plaintiffs' Cross-Motion to defer ruling to take discovery on the Trustee's defenses. As Plaintiffs and *Amici* correctly argue, without an opportunity for discovery, employees have no ability to test this crucial question. The Court agrees that the Bankruptcy Court abused its discretion in granting summary judgment under Rule 56 without allowing Plaintiffs to take discovery under Rule 56(d).

*In re Start Man Furniture, LLC*, 647 B.R. at 138.

36.     A party seeking summary judgment must support its position by citing to "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[,] ... admissions, interrogatory answers, or other materials ...." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the record in the light most favorable to the non-moving party while drawing all reasonable inferences in that party's favor. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). This standard assumes that there is a fully developed evidentiary record to examine. *Doe v. Abington Friends School*, 480 F.3d 252, 257 (3d Cir. 2007) ("[I]t is well established that a court "is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery … This is necessary because, by its very nature, the summary judgment process presupposes the existence of an adequate record.").

37.     As attested to in the Raisner Declaration, Plaintiff has not received documents concerning Defendants' purported liquidation process, the operations of its business during the pendency of the bankruptcy, Defendants' efforts to obtain financing, and the decision-making process that led to the terminations of Defendants' employees. (Raisner Dec. ¶¶ 8-11). Plaintiffs'

First Request for Production of Documents to Defendants seek information directly related to the Defendants' liquidating fiduciary defense, faltering company defense, and unforeseeable business circumstances defense. (Raisner Dec. ¶ 8).  Because of the lack of meaningful discovery on these issues at this juncture, Plaintiff is unable to justify her opposition to most of the facts asserted in the Defendants' Motion.  (Raisner Dec. ¶ 11). Pursuant to Fed. R. Civ. P. 56(d), the Court should defer ruling on the motion until Plaintiff has had the opportunity to take discovery.  *See In re Deb Stores Holding LLC*, 14-12676 (KG), 2018 WL 1577606, at *3 (Bankr. D. Del. Mar. 28, 2018) (deferring summary judgment ruling under Rule 56(d) because "[t]he Court agrees with the Plaintiff and finds that further discovery is necessary.")

### III.    Defendants Were Not a Liquidating Fiduciary on April 5, 2023

38.    The phrase "liquidating fiduciary" neither appears in the text of the WARN Act or its notice and comment Regulation.  It appears only in a preamble that the Department of Labor ("DOL") appended to the Regulation in the Federal Register. *Worker Adjustment and Retraining Notification*, 54 FR 16042-01 (1989 WL 278605).  The preamble recounts that a commentator had asked whether a bankruptcy fiduciary should be treated as a WARN "employer" required to provide notice.  The DOL opined "that a fiduciary whose *sole function* in the bankruptcy process is to liquidate a failed business for the benefit of creditors does not succeed to the notice obligations of the former employer because the fiduciary is not operating a 'business enterprise' [the statutory definition of "employer"] in the normal commercial sense." *Id.* at *16045.  The DOL qualified that further by stating "where the fiduciary may continue to operate the business for the benefit of creditors, the fiduciary *would* succeed to the WARN obligations of the employer precisely because the fiduciary continues the business in operation." *Id.* (emphasis added).  Given that the Code authorizes Chapter 11 debtors in possession to operate their businesses, the DOL's explanation of

"liquidating fiduciary" excludes, on its face, Chapter 11 debtors. *In re World Mktg. Chicago, LLC*, 564 BR 587, 600 (Bankr. N.D. Ill. 2017) (under the Code, "the sole function of the chapter 11 debtor in possession or trustee is *not* to liquidate").

39.     The Third Circuit's *United Healthcare* decision is the primary authority in this Circuit interpreting the DOL's preamble language of "operating business" and "normal commercial sense." *In Official Comm. of Unsecured Creditors of United Healthcare Sys., Inc. v. United Healthcare Sys., Inc.* (*In re United Healthcare Sys., Inc.*), 200 F.3d 170 (3d Cir. 1999) ("*United Healthcare*"). In *United Healthcare*, the defendant hospital's board accepted an offer to sell its assets to another hospital and close. Three days later, United Healthcare announced that it would close and surrendered its certificates of need. *Id.* at 173. The same day, it (1) filed a voluntary Chapter 11 bankruptcy petition, (2) provided its approximately 1,300 employees with 60 days' notice of termination, and (3) filed an emergency application for the sale of its goodwill. Within 48 hours, United Healthcare had transferred or sent home all its patients. *Id.* Thereafter, United Healthcare's employees were "unable to perform their regular duties." *Id.* Instead, over the next 16 days until they were terminated they only "cleaned, took inventory, and prepared the company assets for sale" *id*. which caused the Third Circuit panel to hold that the hospital, at that point, was a liquidating fiduciary:

> [W]hether a bankrupt entity is an 'employer' under the WARN Act depends on the nature and extent of the entity's business and commercial activities while in bankruptcy. … The more closely the entity's activities resemble those of a business operating as a going concern, the more likely it is that the entity is an "employer;" the more closely the activities resemble those of a business winding up its affairs, the more likely it is the entity is not subject to the WARN Act."

*Id*. at 178. Given the hospital's complete abandonment of its normal business activities and in favor of pre-liquidating cleaning, inventory-taking, and preparations, the panel held that the activities no longer resembled those of going concern. *Id.*

40.     Here, Defendants have not pointed to a single employee whose activities changed before they were terminated. Not only did the company *resemble* a going concern, it was, in fact, a going concern.  As of the date of the layoff, Defendants' 1,300 or so employees were fully engaged in normal business activities.  And as of the petition date, two months later, 300 were retained to carry on Defendants' business.  (B.K. D.I. 12, ¶¶ 15, 16).

41.     Unlike the United Healthcare employees, Defendants' employees were performing their jobs just as they had on April 5th, the day they were terminated. Defendants did not file for Chapter 11 bankruptcy until June 4, 2023, almost two months *after* the terminations. There is no evidence Defendants were in liquidation mode as of April 5. (BK D.I. 12, ¶ 15).

42.     Defendants' operation of its business as of April 5th denotes business is going on. Defendants did not file for bankruptcy until two months later, on June 4, 2023 and by their own admission, the execution of liquidation plan would not occur until months *after* the section 363 sale. (BK. D.I. 70 ¶ 11)(Adv. D.I. 17  ¶ 63).  Defendants stretch the loose concept of "liquidation" to argue announcing a shutdown of some operations is equivalent to an actual liquidation of assets. Congress enacted WARN precisely to require notice to employees 60 days before a planned shutdown.  As one court explained when granting the plaintiff's motion to strike the liquidating fiduciary defense, the exception would "swallow the rule" and "eviscerate [WARN]" if taking the "preliminary steps towards liquidation, while otherwise continuing to carry on its business" exempted an employer from notice.  *Law v Am. Capital Strategies,* CIV. 3:05-0836, 2007 WL 221671, at *17 (M.D. Tenn. Jan. 26, 2007).

43.     In *In re Start Man Furniture*, both the Bankruptcy and District Courts held that a furniture company did not qualify for the liquidating fiduciary defense despite its having commenced chain-wide going- -out-of-business sales prior to terminating its employees. *In re Start*

*Man Furniture, LLC*, 647 B.R. at 131 ("As the Third Circuit and Bankruptcy Court recognized, the dispositive issue is whether the business is operating."). On April 5, Defendants were operating in the normal course. That Defendants may have had planned to liquidate following a 363 sale months after the June bankruptcy filing did not alter their going concern status in April, May and June. (B.K. D.I. 12, ¶¶ 15, 16) (Adv. D.I. 18, ¶ 24). Judgment on this issue, if not outright in favor of Plaintiff, should be deferred until after the close of discovery.

44.     *In re World Marketing Chicago* is also instructive here. 564 B.R. at 602. World Marketing announced that it was shutting down operations, yet had also filed motions to use cash collateral, claiming the cash was necessary "to operate its business." *Id.* The *World Marketing* court found that even "if the Debtors were conducting their business solely for the purposes of a sale, they were engaged in some form of business," and found compelling reasons not to apply the "court-made liquidating fiduciary exception." *Id.* at 603. It noted that exceptions to WARN should be "applied sparingly" given it is "remedial legislation and its exceptions are to be construed narrowly." *Id.*

45.     Defendants have put forth no evidence that they were engaged in the process of liquidation on April 5, 2023 when they terminated Plaintiff and the putative class. The liquidating defense does not apply. Summary judgment on this issue must be denied.

**IV.     The Cause of the Employees' Termination Has Not Been Proven**

46.     Defendants offer "facts" supporting their UBC to show that the events immediately preceding the shutdown on April 5th were an unexpected surprise. The record is incomplete; accordingly, a ruling on this defense should be deferred.

47.     On the surface, Defendants' narrative of their UBC defense seems plausible: a request for $30 million loan from its lenders that would keep the business afloat for some time. On

closer inspection, however, the record indicates a different story—one that warrants formal discovery. The record suggests that there was no realistic expectation that PGX would have the $30 million because it knew for some time, and its lenders were aware, that the company would not be able to provide audited financials by March 31, 2023, which was a requirement for it to stay in compliance of its credit agreement. It could not have been a surprise, therefore, that its request for the loan was denied. (Exh. 1 and 2 to Raisner Dec.).

48.     The WARN Act provides: "An employer may order a plant closing or mass layoff before the conclusion of the 60-day period if the closing or mass layoff is caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required."  29 U.S.C. § 2102(b)(2)(A).  The Department of Labor's WARN regulation interprets "circumstances" as meaning those *outside* the company's control that are sufficiently extreme:

(1) An important indicator of a business circumstance that is not reasonably foreseeable is that the circumstance is caused by some sudden, dramatic, and unexpected action or condition **outside the employer's control**. …

(2) The test for determining when business circumstances are not reasonably foreseeable focuses on an employer's business judgment. The employer must exercise such commercially reasonable business judgment as would a similarly situated employer in predicting the demands of its particular market. …

20 C.F.R. § 639.9(b) (emphasis added).  Whether the cause of PGX's downward spiral acceleration was the combination of the uncertainty caused by the CFPB Action or some combination of that litigation and the COVID-19 pandemic cannot be fully examined without further discovery.

49.     Plaintiff alleges in the Complaint, in early 2022, Defendants' chief officers became increasingly concerned that an adverse ruling by the court on CFPB's motion would jeopardize their business.  They were aware that the TSR rule ran headlong into their practice of generating revenue upfront.  They quickly sought to determine whether there was a viable path for the company to remain financially sound. They brainstormed to formulate alternative practices and business

15

models that would not violate the TSR.  Over the spring and summer of 2022, they beta-tested several concepts by arming a cohort of telemarketers with new pitches and methods to see if they could generate sufficient sales to save the company.  (Adv. D.I., ¶ 42).  They had no reason to undertake these extensive efforts except for the fact that a negative CFPB's ruling was eminently foreseeable.  Given the reasonable foreseeability of that outcome they sought to reinvent and roll out brand new business models for almost a year. What is apparent is that in early 2023, PGX was already suffering financial difficulties, the company was bleeding executives and internally, there was a recognition that things were not all right. (Adv. D.I. 1, ¶¶ 40, 42-48).

50.     The faltering company defense focuses solely on one date – February 4, 2023, the 60th day prior to the April 5, 2023 layoffs, not at any other time. *In re APA Transport Corp. Consol. Litig.*, 541 F.3d 233, 248 (3d Cir. 2008), *as amended* (Oct. 27, 2008). "The plain language of the statute states that a company must be actively seeking additional financing "as of the time that notice would have been required." 29 U.S.C. § 2102(b)(1) *Id*. Defendants must prove that on that day, they were actively seeking  new capital or business, had a realistic opportunity to obtain an amount sufficient to have alleviated the need for layoffs but which would have been precluded by sending a conditional WARN notice.  *Id.at 246-47.*   Efforts to sell the company or its assets are not a defense. *In re AE Liquidation Corp.*, 522 B.R. 62, 67 (Bankr. D. Del. 2014)(seeking bids for going concern sale do not qualify for faltering company exception under WARN). As stated by the Court in *AE Liquidation,* "Case law makes clear that a sale of the business does not meet this definition.". *Id., citing Law v. Am. Capital Strategies, Ltd.,* CIV. 3:05–0836, 2007 WL 221671 at *10  (M.D.Tenn.2007) ("This Court concludes that [the faltering company] exception is inapplicable where, as here, the closings and/or layoffs occur as a result of a failed business sale."); *Local 397, Int'l Union of Elec., Elec., Salaried, Mach. & Furniture Workers, AFL–*

*CIO v. Midwest Fasteners, Inc.,* 763 F.Supp.78 (D.N.J. 1990) (negotiating the sale of a company does not qualify as "actively seeking capital").

51.     There is nothing in Defendants' motion that suggests, no less proves, that Defendants were actively seeking, on February 4, 2023, new capital that fits into the "narrowly construed" parameters of this defense.  541 F.3d at 247 *citing* 20 C.F.R. § 639.9(a)(1). In March 2023, Defendants received the summary judgment decision which they had anticipated and spent a year preparing for, and sought a loan that was predictably turned down. Neither of these events provide Defendants a defense under the WARN Act's strict liability scheme. Id.

## <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiff respectfully requests that this Court deny the Defendants' motion.

Dated: October 20, 2023                    Respectfully submitted,


By:     /s/ Christopher D. Loizides
          Christopher D. Loizides (No. 3968)
          **LOIZIDES, P.A.**
          1225 King Street, Suite 800
          Wilmington, Delaware 19801
          Telephone: (302) 654-0248
          Facsimile: (302) 654-0728
          E-mail: loizides@loizides.com
          - and –
          **RAISNER ROUPINIAN LLP**
          Jack A. Raisner *(admitted pro hac vice)*
          René S. Roupinian *(admitted pro hac vice)*
          270 Madison Avenue, Suite 1801
          New York, New York 10016
          Telephone: (212) 221-1747
          Facsimile: (212) 221-1747
          Email: jar@raisnerroupinian.com
          Email: rsr@raisnerroupinian.com

          *Attorneys for Plaintiff and the putative class*