IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>PGX HOLDINGS, INC., *et al.*,<br><br>                        Debtors.¹ | Chapter 11<br><br>Case No. 23-10718 (CTG)<br><br>(Jointly Administered) |
| KIRSTEN HANSEN on behalf of herself and all others similarly situated,<br><br>                        Plaintiff,<br><br>                v.<br><br>PGX HOLDINGS, INC.; PROGREXION HOLDINGS, INC.; PROGREXION TELESERVICES, INC.; PROGREXION MARKETING, INC.; PROGREXION ASG, INC.; PROGREXION IP, INC.; EFOLKS, LLC; CREDITREPAIR.COM, INC.; CREDIT.COM, INC.; and JOHN C. HEATH, ATTORNEY AT LAW PC,<br><br>                        Defendants. | Adv. Proc. No. 23-50396 (CTG) |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS**

Plaintiff submits the following response to Defendants' Statement of Undisputed Facts in its Brief in Support of Motion for Summary Judgment (D.I. 17 at 3, ¶¶ 5-69).

**A. The CFPB Litigation:**

5.     **Defendants' Statement:** On May 2, 2019, the Bureau of Consumer Financial Protection (the "CFPB") filed a civil action styled *Bureau of Consumer Financial Protection v.*

1

*Progrexion Marketing, Inc. et. al.*, Case 2:19-CV-00298-BSJ (the "CFPB Litigation") in the United States District Court, District of Utah (the "Utah Court"). Wallace Dec. ¶ 39.

**Plaintiff's response: Not disputed.**

6. **Defendants' Statement:** The CFPB alleged five counts against Defendants Progrexion Marketing, Inc., PGX Holdings, Inc., Progrexion Teleservices, Inc., eFolks, LLC, CreditRepair.com, and Lexington Law (collectively, the "CFPB Defendants"). *Id.*

**Plaintiff's response: Not disputed.**

7. **Defendants' Statement:** Count I of the CFPB's amended complaint alleged that commencing March 8, 2016, the CFPB Defendants' billing practices violated the advance fee provision of the Telemarketing Services Rule (the "TSR"), 16 C.F.R. § 310.4(a)(2). Wallace Dec. ¶¶ 9, 39.

**Plaintiff's response: Not disputed.**

8. **Defendants' Statement:** The CFPB sought approximately $2.7 billion in monetary relief for the CFPB Defendants' alleged violation of the TSR. Wallace Dec. ¶ 41.

**Plaintiff's response: Not disputed.**

9. **Defendants' Statement:** Over the next four years, the CFPB Defendants heavily contested the CFPB's interpretation of the TSR and its authority to enforce it. *See e.g.*, Wallace Dec. ¶¶ 40-41.

**Plaintiff's response: Disputed because this statement is a subjective characterization of events.**

10. **Defendants' Statement:** For example, following extensive discovery, on August 20, 2021, Lexington Law moved for summary judgment on Count I of the CFPB's amended

complaint, challenging the CFPB's reading of the TSR for at least five reasons, including constitutional deficiencies. *See* CFPB Litigation D.I. 171.

        **Plaintiff's response: Disputed to the extent this statement contains a subjective characterization of events.**

11.    **Defendants' Statement:** On January 20, 2022, the Utah Court denied Lexington Law's motion "without prejudice." *See* CFPB Litigation D.I. 287.

        **Plaintiff's response: Not disputed.**

12.    **Defendants' Statement:** On January 21, 2022, CFPB Defendants Progrexion Marketing, Inc., PGX Holdings, Inc., Progrexion Teleservices, Inc., eFolks, LLC, and CreditRepair.com, Inc. moved for summary judgment challenging the CFPB's interpretation of the TSR. *See* CFPB Litigation D.I. 288.

        **Plaintiff's response: Not disputed.**

13.    **Defendants' Statement:** On May 16, 2022, the Utah Court denied that motion for summary judgment "without prejudice." *See* CFPB Litigation D.I. 403.

        **Plaintiff's response: Not disputed.**

14.    **Defendants' Statement:** On December 10, 2021, the CFPB moved for partial summary judgment on Count I of its amended complaint against all CFPB Defendants. *See* CFPB Litigation D.I. 257.

        **Plaintiff's response: Not disputed.**

15.    **Defendants' Statement:** The parties filed multiple briefs in support and opposition to the CFPB's motion for summary judgment, and the Utah Court held multiple hearings on that motion. *See e.g.,* CFPB Litigation D.I. 257, 277, 283, 301, 306, 341, 358, 470, 475, 478, 480.

**Plaintiff's response: Not disputed.**

16. **Defendants' Statement:** Notably, the CFPB Defendants challenged again the CFPB's interpretation of the TSR, urging the Utah Court to adopt the United States Court of Appeals for the Fifth Circuit's The decision in a parallel case, *Community Financial Services Ass'n of America v. CFPB*, 51 F.4th 616 (5th Cir. Oct. 19, 2022). *See* CFPB Litigation D.I. 496.

**Plaintiff's response: Disputed to the extent this statement contains a subjective characterization of events.**

17. **Defendants' Statement:** In that case, the Fifth Circuit held that "Congress's cession of its power of the purse to the [CFPB] violates the Appropriations Clause and the Constitution's underlying structural separation of powers." *Community Financial,* 51 F. 4th at 644.

**Plaintiff's response: Not disputed.**

18. **Defendants' Statement:** The CFPB Defendants pointed to the CFPB's petition for writ of *certiorari* to the Supreme Court of the United States, where the CFPB argued that the Fifth Circuit's decision could impact its case against the CFPB Defendants because the opinion "calls into question virtually every action [the CFPB] has taken in the 12 years since it was created." *See* CFPB Litigation D.I. 496 at 1 (quoting the CFPB's petition for a writ of certiorari).

**Plaintiff's response: Disputed to the extent this statement contains a subjective characterization of events.**

19. **Defendants' Statement:** On February 27, 2023, the Supreme Court granted the CFPB's petition for a writ of *certiorari* but delayed oral arguments on the CFPB's constitutionality until October 2, 2023. *See* U.S. D.I. 22-448 (Jul. 14, 2023).

**Plaintiff's response: Not disputed.**

4

20. **Defendants' Statement:** Against this backdrop, on Friday, March 10, 2023, the Utah Court entered an order granting partial summary judgment in favor of the CFPB on Count I of its amended complaint (the "March 10 Order"). *See* CFPB Litigation D.I. 508.

**Plaintiff's response: Disputed to the extent this statement contains a subjective characterization of events.**

21. **Defendants' Statement:** The Utah Court concluded that the CFPB Defendants' business practices violated the TSR, but "the court ma[de] no determination regarding damages." *See* March 10 Order at 13.

**Plaintiff's response: Not disputed.**

22. **Defendants' Statement:** The next business day, on Monday, March 13, 2023, the CFPB Defendants moved to stay the March 10 Order pending interlocutory review by the United States Court of Appeals for the Tenth Circuit. *See* CFPB Litigation D.I. 509-513.

**Plaintiff's response: Not disputed.**

23. **Defendants' Statement:** On March 15, 2023, the Tenth Circuit entered an order temporarily staying the March 10 Order pending interlocutory review. *See* CFPB Litigation D.I. 515.

**Plaintiff's response: Not disputed.**

24. **Defendants' Statement:** Over the next three weeks, the CFPB and CFPB Defendants briefed motions seeking a stay and review of the March 10 Order. *See* CFPB Litigation D.I. 509-536.

**Plaintiff's response: Not disputed.**

25. **Defendants' Statement:** For example, on March 23, 2023, the CFPB Defendants moved to expedite the hearing on their motion to stay the March 10 Order, arguing that

"compliance with the March 10 Order will put [the CFPB Defendants] out of business in short order" partly because the CFPB Defendants "would have to cease monthly billing for the over 80% of credit repair clients who signed up for services over the phone for at least six months – causing [the CFPB Defendants] to run out of cash within a few weeks." *See* CFPB Litigation D.I. 519.

**Plaintiff's response: Disputed to the extent this statement contains a subjective characterization of events.**

26. **Defendants' Statement:** On April 4, 2023, the Tenth Circuit lifted the temporary stay and denied interlocutory review of the March 10 Order. *See* CFPB Litigation D.I. 537.

**Plaintiff's response: Not disputed.**

27. **Defendants' Statement:** On April 6, 2023, the Utah Court denied the CFPB Defendants' motion to stay the March 10 Order. *See* CFPB Litigation D.I. 539.

**Plaintiff's response: Not disputed.**

28. **Defendants' Statement:** On June 7, 2023, the Utah Court also denied the CFPB's motion for "Award of Monetary and Injunctive Relief, Assessment of Civil Money Penalties, and Entry of Final Judgment Against all Defendants on Count I." *See* CFPB Litigation D.I. 574. The Utah Court concluded "it became apparent that outstanding issues of fact preclude the Court from entering Plaintiff's requested relief at this time." *Id.* at 3.

**Plaintiff's response: Disputed to the extent this statement contains a subjective characterization of events.**

29. **Defendants' Statement:** Two months earlier, the CFPB Defendants had been forced to stop all marketing, close call centers, and institute a review of billing practices across

their businesses to comply with the CFPB's interpretation of the TSR and to avoid financial catastrophe. *See* Wallace Dec. ¶ 29.

**Plaintiff's response: Disputed to the extent this statement contains a subjective characterization of events and there is no documentary evidence that the CFPB Defendants had been "forced" to stop all marketing, close call centers, and institute a review of billing practices across their businesses to comply with the CFPB's interpretation of the TSR and to avoid financial catastrophe.**

**B. Defendants' Relevant Financial History:**

30. **Defendants' Statement:** In 2021, the PGX Defendants generated approximately $457 million in gross revenue. *See* Supplemental Declaration of Chad Wallace in Support of this Motion (the "Wallace Sup. Dec."), filed concurrently, at ¶ 5.

**Plaintiff's response: Plaintiff is unable to respond to this statement because discovery has not commenced and there are no documents in the evidentiary record to support this statement.**

31. **Defendants' Statement:** In 2022, the PGX Defendants generated approximately $335 million in gross revenue, which included $251.6 million paid by Lexington Law for the services described above. *See* Wallace Dec. ¶¶ 20, 27.

**Plaintiff's response:  Plaintiff is unable to respond to this statement because discovery has not commenced and there are no documents in the evidentiary record to support this statement.**

32. **Defendants' Statement:** In the first quarter of 2023, the PGX Defendants generated approximately $64 million in gross revenue. Wallace Sup. Dec. ¶ 7.

7

**Plaintiff's response:** Plaintiff is unable to respond to this statement because discovery has not commenced and there are no documents in the evidentiary record to support this statement.

33. **Defendants' Statement:** The PGX Defendants supplemented their revenue through two primary credit facilities that they refinanced in July 2021 due to COVID-related headwinds. *See* Wallace Dec. ¶¶ 30-34.

**Plaintiff's response:** Plaintiff is unable to respond to this statement because discovery has not commenced and there are no documents in the evidentiary record to support this statement.

34. **Defendants' Statement:** Specifically, on July 21, 2021, the PGX Defendants and some of their affiliates entered into the First Lien Financing Agreement (the "First Lien Facility") with certain lenders and Blue Torch Finance LLC as administrative and collateral agent. *See* Wallace Dec. ¶ 31.

**Plaintiff's response:** Plaintiff is unable to respond to this statement because discovery has not commenced and there are no documents in the evidentiary record to support this statement.

35. **Defendants' Statement:** On July 21, 2021, the PGX Defendants and some of their affiliates entered into a second-lien term loan credit facility (the "Second Lien Facility") with certain creditors and Prospect Capital Corporation as administrative agent for the creditors. Wallace Dec. ¶ 33.

**Plaintiff's response:** Plaintiff is unable to respond to this statement because discovery has not commenced and there are no documents in the evidentiary record to support this statement.

36. **Defendants' Statement:** The First Lien Facility and Second Lien Facility (the "Prepetition Facilities") refinanced pre-existing debt and included additional liquidity tests in the event of a judgment or resolution of the CFPB Litigation. Wallace Dec. ¶ 48.

**Plaintiff's response: Plaintiff is unable to respond to this statement because discovery has not commenced and there are no documents in the evidentiary record to support this statement.**

37. **Defendants' Statement:** Between July 2021 and the fall of 2022, the PGX Defendants continued to face financial headwinds, and in September 2022, they engaged a financial advisor and restructuring counsel to explore a possible recapitalization or restructuring of the Prepetition Facilities. Wallace Dec. ¶ 50.

**Plaintiff's response: Plaintiff is unable to respond to this statement because discovery has not commenced and there are no documents in the evidentiary record to support this statement.**

38. **Defendants' Statement:** Those negotiations culminated on December 28, 2022, when the prior majority owner of PGX Holdings, Inc. agreed to transfer equity to Prospect, and in exchange, the creditors agreed to advance $40 million in new funds under the Prepetition Facilities (the "December 2022 Facility"). Wallace Dec. ¶¶ 50-51.

**Plaintiff's response: Plaintiff is unable to respond to this statement because discovery has not commenced and there are no documents in the evidentiary record to support this statement.**

39. **Defendants' Statement:** The December 2022 Facility consisted of $15 million that the lenders advanced on December 28, 2022, and an additional $30 million that were to be disbursed throughout the Spring of 2023. Wallace Dec. ¶ 51.

**Plaintiff's response:  Plaintiff is unable to respond to this statement because discovery has not commenced and there are no documents in the evidentiary record to support this statement.**

40. **Defendants' Statement:** On March 17, 2023, the PGX Defendants requested to draw the $30 million balance of the December 2022 Facility to supplement their revenue so they could cover operating expenses, including payroll, and make a $7.7 million interest payment that was due March 31, 2023, on the Prepetition Facilities. *See* Wallace Dec. ¶ 53; *see also*, Wallace Sup. Dec. ¶ 10.

**Plaintiff's response:  Plaintiff is unable to respond to this statement because discovery has not commenced.**

41. **Defendants' Statement:** The $30 million in additional funding available under the December 2022 Facility would have also allowed the PGX Defendants to continue business operations for several months. Wallace Sup. Dec. ¶ 11.

**Plaintiff's response:  Disputed as to the characterization of events.**

42. **Defendants' Statement:** On March 24, 2023, Prospect did not fund the PGX Defendants' request, stating that the borrowers had not satisfied all conditions under the Prepetition Facilities. Wallace Sup. Dec. ¶ 12.

**Plaintiff's response:  Not disputed.**

43. **Defendants' Statement:** A copy of Prospect's rejection of the $30 million draw is attached as Exhibit 1 to Wallace's Supplemental Declaration. *See* Wallace Sup. Dec. ¶ 13.

**Plaintiff's response:  Not disputed.**

44. **Defendants' Statement:** On March 29, 2023, the PGX Defendants replied demanding that Prospect fund the $30 million draw because they had not defaulted under the

Second Lien Facility and failure to receive those funds would cause the PGX Defendants to shut down operations. *See* Wallace Sup. Dec. ¶ 14.

    **Plaintiff's response:  Disputed as to the characterization of events.**

45. **Defendants' Statement:** A copy of the PGX Defendants' reply to Prospect is attached as Exhibit 2 to the Wallace Supplemental Declaration. *See* Wallace Sup. Dec. ¶ 15.

    **Plaintiff's response:  Undisputed.**

46. **Defendants' Statement:** On Friday, March 31, 2023, the lenders did not fund the $30 million draw under the December 2022 Facility. Wallace Dec. ¶¶ 54-55.

    **Plaintiff's response:  Plaintiff is unable to respond to this statement because discovery has not commenced and there are no documents in the evidentiary record to support this statement.**

47. **Defendants' Statement:** Instead, the PGX credit parties negotiated a short forbearance agreement with the prepetition lenders and skipped the $7.7 million interest payment that was due on March 31, 2023. *See* Wallace Sup. Dec. ¶ 17. The parties entered into successive forbearance agreements with respect to the Prepetition Facilities effective through June 4, 2023 (collectively, the "Forbearance Agreements"). *Id.* With the Forbearance Agreements in place, the parties focused on a more comprehensive restructuring transaction to be effectuated through a chapter 11 process. Wallace Dec. ¶¶ 54-55.

    **Plaintiff's response:  Plaintiff is unable to respond to this statement because discovery has not commenced and there are no documents in the evidentiary record to support this statement.**

**C. Layoffs and Bankruptcy Filing:**

48. **Defendants' Statement:** Throughout the CFPB Litigation, the Defendants worked on alternative business models that would address the CFPB's concerns. Wallace Sup. Dec. ¶ 18.

**Plaintiff's response:** Plaintiff is unable to respond to this statement because discovery has not commenced and there are no documents in the evidentiary record to support this statement.

49. **Defendants' Statement:** Those efforts continued until April 4, 2023, when the Tenth Circuit denied the motion to for interlocutory appeal and lifted its stay of the March 10 Order. Wallace Sup. Dec. ¶ 19.

**Plaintiff's response:** Plaintiff is unable to respond to this statement because discovery has not commenced and there are no documents in the evidentiary record to support this statement.

50. **Defendants' Statement:** By then, the PGX Defendants had determined they would run out of liquidity in mid-May 2023, and that a sale of substantially all of their assets, followed by a controlled liquidation through chapter 11 would yield the highest return for creditors. Wallace Sup. Dec. ¶ 20.

**Plaintiff's response:** Plaintiff is unable to respond to this statement because discovery has not commenced and there are no documents in the evidentiary record to support this statement.

51. **Defendants' Statement:** Between April 5 and 6, 2023, some of the Defendants shut down nearly 80% of their operations while conducting the first round of employee layoffs as follows (the "First Layoffs"):

a. Progrexion Teleservices, Inc. laid off a total of 800 employees at 8 facilities

located throughout 7 states;

b. Progrexion ASG, Inc., laid off 77 employees at 7 facilities located throughout 6 states; and,

c. Progrexion Marketing, Inc. laid off 14 employees who worked out of its Salt Lake City, Utah facility. Wallace Sup. Dec. ¶¶ 21(a)-(c).

**Plaintiff's response: Plaintiff is unable to respond to this statement because discovery has not commenced and there are insufficient documents in the evidentiary record to support this statement.**

52. **Defendants' Statement:** Examples of the termination notices sent to employees by Progrexion Teleservices, Inc., Progrexion ASG, Inc., and Progrexion Marketing, Inc. during the First Layoffs are attached as Exhibit 3 to Wallace's Supplemental Declaration. *See* Wallace Sup. Dec. ¶ 22.

**Plaintiff's response: Plaintiff is unable to respond to this statement because discovery has not commenced and there are insufficient documents in the evidentiary record to support this statement.**

53. **Defendants' Statement:** Meanwhile, between April and May 2023, with the Forbearance Agreements in place, the Defendants and their advisors prepared for a chapter 11 filing. *See* Wallace Sup. Dec. ¶¶ 24. While developing a framework with the existing lenders that contemplated a section 363 sale, followed by a liquidating chapter 11 plan, the Debtors' investment banker aggressively marketed a 6-month debtor-in-possession financing to at least 30 potential DIP lenders. *See id.* Despite the robust marketing process, no alternative DIP proposals emerged. *See id.*

**Plaintiff's response:** Plaintiff is unable to respond to this statement because discovery has not commenced and there are no documents in the evidentiary record to support this statement. Disputed to the extent this statement contains legal conclusions.

54. **Defendants' Statement:** Concurrently, Lexington Law began mothballing operations in advance of the chapter 11 process given that the PGX Defendants could no longer support Lexington Law's practice. Wallace Sup. Dec. ¶ 25.

**Plaintiff's response:** Plaintiff is unable to respond to this statement because discovery has not commenced and there are no documents in the evidentiary record to support this statement. Disputed to the extent this statement contains legal conclusions.

55. **Defendants' Statement:** To that end, on May 11, 2023, Lexington Law laid off 123 employees who worked in Arizona and Utah; Progrexion ASG, Inc. laid off an additional 13 employees at two locations; and CreditRepair.com, Inc. laid off 15 employees at its facilities in Salt Lake City, Utah (the "Second Layoffs"). Wallace Sup. Dec. ¶ 26.

**Plaintiff's response:** Plaintiff is unable to respond to this statement because discovery has not commenced and there are insufficient documents in the evidentiary record to support this statement.

56. **Defendants' Statement:** Examples of the termination notices sent to employees by Lexington Law and Progrexion ASG, Inc. as part of the Second Layoffs are attached as Exhibit 4 to Wallace's Supplemental Declaration. *See* Wallace Sup. Dec. ¶ 27.

**Plaintiff's response:** Plaintiff is unable to respond to this statement because discovery has not commenced and there are insufficient documents in the evidentiary record to support this statement.

57. **Defendants' Statement:** To ensure a soft landing in chapter 11 and finalize certain documentation, on May 31, 2023, the First Lien Facility lenders agreed to fund a $2.9 million emergency facility ahead of the filing to help the Defendants ease into chapter 11. Wallace Sup. Dec. ¶ 29.

**Plaintiff's response: Plaintiff is unable to respond to this statement because discovery has not commenced and there are no documents in the evidentiary record to support this statement.**

58. **Defendants' Statement:** On June 4, 2023 (the "Petition Date"), Defendants filed voluntary petitions under chapter 11 of the Bankruptcy Code. D.I. 1.

**Plaintiff's response: Not disputed.**

59. **Defendants' Statement:** As part of its first day motions, Debtors sought joint administration of their chapter 11 cases, which the Court subsequently granted. *See* D.I. 3, 55.

**Plaintiff's response: Not disputed.**

60. **Defendants' Statement:** On June 5, 2023, Debtors filed a motion seeking authority to obtain post-petition financing, utilize cash collateral, and grant certain super-priority liens and super-priority administrative expense status to the DIP lenders. D.I. 17.

**Plaintiff's response: Not disputed.**

61. **Defendants' Statement:** Among other things, Debtors sought permission to borrow up to $19.9 million with a 105-day maturity. In exchange for this new-money financing, the Debtors agreed to run a postpetition marketing process for substantially all of their assets and absent any higher or better offers, the DIP lenders agreed to purchase the PGX assets and "support a liquidating plan" and to include "a wind-down budget in the amount of no less than

$2.625 million to support implementation of that plan." D.I. 17 ¶ 2. Separately, the equity holders of Lexington Law agreed to be the stalking horse bidder for the Lexington Law assets.

**Plaintiff's response: Plaintiff is unable to respond to this statement because discovery has not commenced and there are no documents in the evidentiary record to support this statement.**

62.  **Defendants' Statement:** On June 6, 2023, the Court entered an order granting Defendants' motion for authority to obtain post-petition financing on an interim basis (the "Interim DIP Financing Order"). D.I. 70.

**Plaintiff's response: Not disputed.**

63.  **Defendants' Statement:** Under the Interim DIP Financing Order, the Court authorized Defendants to borrow up to $12 million in new-money commitments, with the remaining amount subject to a final order. *See* D.I. 70-1 at ¶ 6.01(s). The Court also approved adequate protection for pre-petition secured creditors and DIP lenders, including the Defendants' covenant to meet certain milestones leading to Defendants' disposition of all their assets at a section 363 auction within 65 days after the Petition Date. *See* D.I. 70 ¶ 11.

**Plaintiff's response: Not disputed.**

64.  **Defendants' Statement:** On June 6, 2023, Defendants Lexington Law laid off 13 employees who worked at two facilities in Arizona and Utah; Progrexion ASG, Inc. laid off 17 employees at three facilities in Utah, Texas, and Arizona; and Progrexion Marketing, Inc. laid off 3 employees at its facilities in Salt Lake City, Utah (the "Third Layoffs"). Wallace Sup. Dec. ¶ 30.

**Plaintiff's response:** Plaintiff is unable to respond to this statement because discovery has not commenced and there are insufficient documents in the evidentiary record to support this statement.

65. **Defendants' Statement:** Examples of the termination notices sent to employees by Lexington Law, Progrexion ASG, Inc., and Progrexion Marketing, Inc. during the Third Layoffs are attached as Exhibit 5 to Wallace's Supplemental Declaration. *See* Wallace Sup. Dec. ¶ 31.

**Plaintiff's response:** Plaintiff is unable to respond to this statement because discovery has not commenced and there are insufficient documents in the evidentiary record to support this statement.

D. **Plaintiff's Claims**:

66. **Defendants' Statement:** Plaintiff was laid off by Progrexion Teleservices, Inc. during the First Layoffs on April 5, 2023. Wallace Sup. Dec. ¶ 23.

**Plaintiff's response:** Not disputed.

67. **Defendants' Statement:** On May 24, 2023, Plaintiff filed a complaint in the U.S. District Court for the District of Utah against all Defendants alleging the layoffs violated the WARN Act. Wallace Sup. Dec. ¶ 28.

**Plaintiff's response:** Not disputed.

68. **Defendants' Statement:** On June 5, 2023 – one day after the Petition Date – Plaintiff initiated this adversary proceeding by filing an identical complaint in this Court. *See* Adv. D.I. 1.

**Plaintiff's response:** Not disputed.

69. **Defendants' Statement:** In this proceeding, Plaintiff seeks priority under 11 U.S.C. §§ 507(a)(4) and (a)(5) for up to $15,150 for each of the employees who were laid off by any of the Defendants within 90 days of April 5, 2023, arguing those layoffs violated the WARN Act. Adv. D.I. 1 at 13-14.

**Plaintiff's response:** Not disputed.

Dated: October 20, 2023

Respectfully submitted,

By: /s/ Christopher D. Loizides
Christopher D. Loizides (No. 3968)
**LOIZIDES, P.A.**
1225 King Street, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 654-0248
Facsimile: (302) 654-0728
E-mail: loizides@loizides.com

- and –

**RAISNER ROUPINIAN LLP**
Jack A. Raisner *(admitted pro hac vice)*
René S. Roupinian *(admitted pro hac vice)*
270 Madison Avenue, Suite 1801
New York, New York 10016
Telephone: (212) 221-1747
Facsimile: (212) 221-1747
Email: jar@raisnerroupinian.com
Email: rsr@raisnerroupinian.com

*Attorneys for Plaintiff and the putative class*