## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

CRAIG T. GOLDBLATT
JUDGE



824 N. MARKET STREET
WILMINGTON, DELAWARE
(302) 252-3832

October 24, 2023

**VIA CM/ECF**

Re:   *Hansen v. PGX Holdings, Inc., et al.*, Adv. Proc. No. 23-50396

Dear Counsel:

The debtors in the main bankruptcy case, all of whom are defendants in this adversary proceeding, operated a credit repair services business.[1] Following an adverse ruling in a lawsuit brought against them by the Consumer Financial Protection Bureau in the U.S. District Court for the District of Utah, the debtors terminated most of their employees.[2] The debtors filed these chapter 11 bankruptcy cases soon thereafter. A former employee initiated this lawsuit, for herself and a

---

[1] *See In re PGX Holdings, Inc.*, Bankr. D. Del. No. 23-10718, D.I. 12 ("First Day Declaration") ¶ 5. Citations to materials on the docket of the main bankruptcy are hereafter cited as "Main Case D.I. __." PGX Holdings, Inc., Progrexion Holdings, Inc., Progrexion Teleservices, Inc., Progrexion Marketing, Inc., Progrexion ASG, Inc., Progrexion IP, Inc., eFolks, LLC, Creditrepair.com, Inc., Credit.Com, Inc., and John C. Heath, Attorney at Law PC, d/b/a Lexington Law Firm or Lexington Law are referred to collectively as "debtors" or "defendants."

[2] Main Case D.I. 12 ¶¶ 9-10.

class of similarly situated individuals, alleging that the layoff violated the Worker Adjustment and Retraining Notification Act of 1988 (the "WARN Act").

Plaintiff moved to certify the class under Civil Rule 23. Defendants object, arguing that the plaintiff has failed to satisfy the requirements of Rule 23(a) and Rule 23(b)(3). While the defendants are correct that the class definition is not properly ascertainable in its current proposed form, that problem is eminently fixable. Defendants' argument otherwise falls short. The Court will therefore grant the motion to certify the class. The parties should confer to determine whether they might agree on appropriate language to solve the class definition problem. If so, the Court will enter an appropriate order on certification. If not, the parties should submit competing forms of order.

## Factual and Procedural Background

The basic background facts are not disputed. Defendants operated credit repair brands and employed at least 900 people.[3] Defendants shared officers, employees, office locations, advertising and marketing functions, and other day-to-day functions.[4]

In 2019, the CFBP filed a complaint in federal court against some defendants for violations of telemarketing rules.[5] In the winter of 2021-2022, the agency moved

---

[3] Main Case D.I. 12 ¶¶ 5-6, 19. Plaintiff alleges that over 900 employees were terminated. D.I. 6-1 ¶¶ 4, 14.

[4] D.I. 6-1 ¶¶ 9-15.

[5] Main Case D.I. 12 ¶ 9.

for partial summary judgment, which the court granted on March 10, 2023.[6] On April 5 and 6, after trying but failing to secure stays in the district court and the Tenth Circuit, the defendants terminated approximately 80% of their employees without 60-days' written notice or severance.[7]

Kirsten Hansen was employed by Progrexion Teleservices as a Senior Director of Operational Support – Teleservices from February 2013 until she was terminated with most of the defendants' staff on April 5, 2023.[8] She filed this representative action seeking relief under the WARN Act on behalf of herself and similarly situated former employees and sought class certification.[9]

Hansen moves this Court to certify a class.[10] The defendants oppose the motion, offering five reasons to deny class certification: (1) the class definition is not clear, objective, and ascertainable; (2) the plaintiff's claims are not typical of the class because she does not have the same employer or work location; (3) the class lacks a common question because of varying work stations and employers; (4) the class

---

[6] *Id.* ¶ 10.

[7] *Id.* ¶ 10. D.I. 8 ¶ 3.

[8] D.I. 6-1 ¶¶ 4-5. There appears to be an outstanding factual question whether Hansen was employed by both PGX and Progrexion Teleservices or only Progrexion. D.I. 1 ¶ 9; D.I. 8 ¶ 23 n.3. That dispute does not appear to be material to the resolution of this motion.

[9] D.I. 1; D.I. 8 ¶ 3. Plaintiff previously filed suit in district court on May 24, 2023. *See Hansen v. PGX Holdings, Inc.*, No. 2:23-cv-000337 (D. Utah); *see also* D.I. 1 ¶ 4. The district court action was stayed upon the filing of this bankruptcy case, 11 U.S.C. § 362(b)(1), whereupon plaintiff filed suit in this Court.

[10] D.I. 5.

representative and counsel are not adequate; and (5) the Chapter 11 proceeding is superior to a class action to adjudicate these claims.[11]

## Jurisdiction

The district court has subject-matter jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b), as a dispute "arising under" § 502 of the Bankruptcy Code. This case has been referred to this Court under 28 U.S.C. § 157(a) and the district court's standing order of February 29, 2012. Disputes such as this over claims allowance are core matters under 28 U.S.C. § 157(b)(2).

## Analysis

When deciding a motion for class certification, the Court is directed to conduct a rigorous analysis.[12] To the extent there are factual disputes that bear on class certification, the court is required to resolve them.[13] The moving plaintiff must show by a preponderance of the evidence that the requirements of Rule 23 have been satisfied.[14] To the extent the Court's assessment of the class certification issues happen to overlap with the merits of the claim, the Court may examine those merits issues.[15] But other than to the extent a court is required to consider the merits for

---

[11] *See generally* D.I. 8.

[12] *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

[13] *Marcus v. BMW of North America, LLC*, 687 F.3d 583, 591 (3d Cir. 2012).

[14] *Harnish v. Widener Univ. Sch. Of L.*, 833 F.3d 298, 304 (3d Cir. 2016); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 307 (3d Cir. 2008).

[15] *Falcon*, 457 U.S. at 160.

purposes of deciding whether the Rule 23 requirements are satisfied, a court should not otherwise stray into addressing the merits of the underlying dispute.[16]

### I. The class definition can and should be revised so that it is based on objective criteria.

Class definitions must be readily ascertainable by clear and objective criteria. Whether an individual is a member of a class should not require a "mini trial" on the merits of that plaintiff's claim. Rather, a court should be able to readily determine whether an individual is in or out of the class by reference to objective criteria. Class definitions that rest on subjective factors are not permissible.[17] When the class definition rests on legal conclusions, it runs the risk that an individual's membership in the class is insufficiently ascertainable.[18]

The proposed class definition is:

Plaintiff and other similarly situated employees of Defendants: (i) who worked at, received assignments from, or reported to the Facilities, (ii) who were terminated without cause within 90 days of April 5, 2023, or in reasonable anticipation of or as the reasonably foreseeable consequence of the mass layoffs or plant closings ordered by Defendant on or about April 5, 2023, (iii) who are "affected employees" within the meaning of 29 U.S.C. § 2101(a)(5), and (iv) who have not filed a timely request to opt-out of the class.[19]

---

[16] *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-178 (1974).

[17] *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013) (requiring that "the class … be defined with reference to objective criteria" as one of "two important elements" to ascertainability).

[18] *See Jackson v. SE Pennsylvania. Transp. Auth.*, 260 F.R.D. 168, 182 (E.D. Pa. 2009).

[19] D.I. 6-4 at 3.

The first portion of the class definition rests of objective criteria: employees who reported to certain facilities and were terminated within 90 days of April 5, 2023. With few additional facts, these class members could be readily identified. The portions following rest on the merits of individual class member's claims, mirroring the language from the WARN Act.[20] Whether an employee's termination was the "reasonably foreseeable consequence of the mass layoff" cannot be readily determined without determining whether there was a mass layoff within the definition of the WARN Act. Whether the individual is an affected employee within the meaning of 29 U.S.C. § 2101(a)(5) raises the same question. This violates these implicit class definition requirements.[21]

While the proposed definition accordingly is insufficiently definite,[22] that kind of problem is not by itself fatal to the motion for class certification. Rather, the definition may be amended to resolve these problems.[23] Indeed, plaintiff's reply in

---

[20] "Affected employees" are defined as "employees who may reasonably be expected to experience an employment loss as a consequence of a proposed plant closing or mass layoff by their employer." 29 U.S.C. § 2101(a)(5). While the plaintiff attempts to couch these definitions as an objective standard, they cannot escape that it rests on a legal conclusion that individuals meet the statutory definition. D.I. 13 at 5.

[21] *Doe v. Trinity Logistics, Inc.*, No. 17-53-RGA-MPT, 2018 WL 1610514, at *11 (D. Del. Apr. 3, 2018) ("Class definitions that require a court to decide the merits of prospective individual class members' claims to determine class membership—sometimes referred to as 'fail-safe' classes—may also run afoul of the definiteness requirement."). *See also 1 Newberg and Rubenstein on Class Actions* § 3:6 (6th ed. 2023).

[22] *Grimes v. Evergreen Recreational Vehicles*, No. 3:16-CV-472, 2018 WL 1257237, at *4 (N.D. Ind. Mar. 12, 2018).

[23] *Id. See also Finberg v. Sullivan*, 634 F.2d 50, 64 n.9 (3d Cir. 1980) (finding it proper to modify a class definition to meet requirements, rather than denying a motion for certification).

*Hansen v. PGX Holdings, Inc., et al.*, No. 23-50396
October 24, 2023
Page 7 of 17

support of class certification proposes doing exactly this.[24] The parties should confer to find a mutually agreeable resolution to this problem, and if none is available, submit competing orders for the Court to decide.

## II.    The Rule 23(a) requirements are satisfied.

Rule 23(a) requires that each class (1) be so numerous as to make joinder impracticable, (2) share a common question of law or fact, (3) have a class representative whose claims are typical of the class, and (4) be adequately represented by the class representative and counsel.[25]

Based on the filings supporting and opposing this motion, the plaintiff fulfilled the Rule 23(a) requirements.

### A.    The proposed class is so numerous that joinder is impracticable.

There is no dispute that the numerosity requirement is satisfied here. The record before the Court shows that the class contains approximately 900 former employees of the defendants.[26] While there is no strict threshold, courts have generally agreed that 40 members of a class is enough to make joinder impracticable.[27] The proposed class exceeds this threshold.

---

[24] D.I. 13 at 3.

[25] Fed. R. Civ. P. 23(a)(1)-(4). The analysis of the adequacy of class counsel, as supplemented by Rule 23(g), is included in the discussion of adequacy under Rule 23(a)(4).

[26] D.I. 6-1 ¶¶ 4, 14.

[27] Fed. R. Civ. P. 23(a)(1); *Stewart v. Abraham*, 275 F.3d 220, 226-227 (3d Cir. 2001).

B. **The claims of the named plaintiff are typical of the proposed class, and questions common to the class exist.**

Typicality requires that the plaintiff's claim arises from the same event, practice or course of conduct that gave rise to the claims of the class.[28] Factual differences will not render a named plaintiff's claim atypical if her claim is based on the same legal theory as the claims of the class.[29] This enquiry often overlaps the Rule 23(a)(2) commonality requirement because it focuses on the relationship between the representative and the rest of the class.[30] Commonality is fulfilled if the named plaintiffs share just one question of fact or law with the prospective class.[31]

*First*, defendants argue that the proposed named plaintiff's claim is not typical because the plaintiff is not employed by the same entity as other class members, and therefore also lacks a common question.[32] Under the WARN Act, as an exception to the usual principle that the law generally respects the corporate form, legal entities acting together can be jointly liable if they operate as a single business enterprise.[33] Courts consider whether there is "(i) common ownership, (ii) common directors and/or

---

[28] Fed. R. Civ. P. 23(a)(3); *Boley v. Universal Health Servs., Inc.*, 36 F.4th 124, 133 (3d Cir. 2022).

[29] 7 *Newberg and Rubenstein on Class Actions* § 23:21 (6th ed. 2023) (citing *Young v. Tri Cnty. Sec. Agency, Inc.*, No. 13-5971, 2014 WL 1806881, at *3 (E.D. Pa. 2014) (as representative of the typicality rule as applied to employment cases across the circuits).

[30] *See Falcon*, 457 U.S. at 158 n.13.

[31] Fed. R. Civ. P. 23(a)(2); *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).

[32] D.I. 8 at 9-10.

[33] *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 483 (3d Cir. 2001).

officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations."[34]

The plaintiff submitted a declaration alleging the defendant entities operated as a single business enterprise: "In PGX there were no separate 'businesses' with autonomous governance and policies. Employees worked in various lines to support the different facets of PGX's business but many, particularly sales agents were interchangeable so that they shifted seamlessly between the units."[35] Defendants did not rebut these claims. For the purposes of this motion, defendants operated as a single business enterprise.

*Second*, defendants argued that the plaintiff lacked commonality and typicality with the proposed class members because she did not work at the same location as each member of the class.[36] While the WARN Act requires certain thresholds at each plant or location to be met for liability,[37] whether the plaintiff worked at the same location as absent class members is not material to typicality or commonality.

Even if class members did not share a work location with the plaintiff, the plaintiff's claims may still be typical.[38] Typicality only requires that the claim arises from the same event, practice, or course of conduct, which it does here.[39] The plaintiff

---

[34] *Id.* (quoting 20 C.F.R. § 639.3(a)(2)).

[35] D.I. 6-1 ¶ 13. *See also id.* ¶¶ 9-12.

[36] D.I. 8 at 9-10.

[37] 29 U.S.C. § 2101(a)(2), (3).

[38] *See Young,* 2014 WL 1806881, at *3.

[39] *Boley*, 36 F.4th at 133.

*Hansen v. PGX Holdings, Inc., et al.*, No. 23-50396
October 24, 2023
Page 10 of 17

asserted the same cause of action as the other class members, deriving from a common nucleus of the defendant's post-judgment wind-down.[40]

Further, common questions that are central to the litigation exist, regardless of whether the employees shared a working location. Examples of these common questions include:

- whether the defendants are a single business enterprise for the purposes of the WARN Act,[41]
- whether the defendants had 100 or more employees,[42]
- whether the termination notices violated the WARN Act,[43] and
- whether the defendants had a valid defense to the WARN Act claims.[44]

The Court thus concludes that the requirements of typicality and commonality are satisfied.

---

[40] D.I. 1 ¶¶ 55-74.

[41] 29 U.S.C. § 2101(a)(1).

[42] D.I. 6 at 13; 29 U.S.C. § 2101(a)(1)(A).

[43] 29 U.S.C. § 2102.

[44] *See, e.g.,* 20 C.F.R. § 639.9(b)(1). When a defendant's affirmative defense yields a common answer, commonality is satisfied. *See e.g., Abdullah v. U.S. Sec. Associates, Inc.*, 731 F.3d 952, 957 (9th Cir. 2013). *See also Wal-Mart Stores, Inc v. Dukes*, 564 U.S. 338, 350 (2011) ("What matters to class certification ... is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers*...") (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).

## C. The named plaintiff and counsel are adequate to represent the class.

Rule 23(a)(4) requires that the representative parties must fairly and adequately protect the interests of the class.[45] This applies to both the class representative and counsel.

The Court must consider whether the proposed class counsel has sufficient experience, performance, and resources to prosecute the class's claims.[46] The proposed class counsel submitted a declaration, detailing the law firm's experience in WARN Act litigation, performance on those cases, qualifications of both founding partners, and actions taken prosecuting this case.[47] The defendants do not contest that the proposed class's counsel has the requisite experience for adequate representation.[48]

Rather, defendants argue that the class could not be adequately served by an attorney who is in the Northeast, while class members are in the Mountain West.[49] The Court knows of no case that has held otherwise qualified class counsel to be inadequate on these grounds, and defendants point to none. While the Court may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class," this Court will decline the invitation to break

---

[45] Fed. R. Civ. P. 23(a)(4).

[46] Fed. R. Civ. P. 23(g).

[47] See D.I. 6-2 ¶¶ 15-22.

[48] D.I. 8 at 10-11.

[49] *Id.*

new ground by disqualifying otherwise qualified counsel based on counsel's physical location.

The Court must also ensure that the named plaintiff does not have conflicts that go to the heart of the litigation.[50] The proposed class representative was terminated with the proposed class members and is no longer employed by the defendants.[51] She claims no conflict of interest with the other class members.[52] She also actively assisted in the preparation of the complaint and seeks to remain in regular contact with counsel regarding the class action.[53] She appears motivated to adjudicate these claims as she expressed responsibility to the employees she oversaw and eagerness to prosecute the case on their behalf.[54] Defendants have not contested these claims.

Defendants objected to any request of fees from proposed class counsel in preparing the class certification motion.[55] While that matter is not ripe for decision in any event, class counsel has disclaimed any intent to recover fees for this work, explaining that it typically seeks fees as a percentage of any ultimate recovery.[56]

---

[50] *In re Suboxone (Buprenorphine Hydrochlorine and Naloxone) Antitrust Litig.*, 967 F.3d 264, 272 (3d Cir. 2020); *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 184 (3d Cir. 2012).

[51] D.I. 6-1 ¶¶ 4-5.

[52] *Id.* ¶ 26.

[53] *Id.* ¶ 25.

[54] *Id.* ¶¶ 23, 25.

[55] D.I. 8

[56] D.I. 13 at 8.

The Court finds no reason to question the adequacy of class counsel under Civil Rule 23(a)(4) and 23(g) or of the class representative under Civil Rule 23(a)(4).

## III. The Rule 23(b)(3) requirements of predominance and superiority are satisfied.

When a class seeks a monetary award, Rule 23(b)(3) requires the court to conduct two analyses. *First*, the court must "find[] that the questions of law or fact common to the class predominate over any questions affecting only individual[s]."[57] *Second*, the court must find that the aggregate litigation is superior to other available methods of adjudication.[58] In these analyses, the Court should consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.[59]

The fundamental question here is whether the class has sufficient cohesion for their claims to be heard together.[60] The Court analyzes the key legal and factual issues being proven or disproven, then determines whether those issues are susceptible to determination with common evidence.

---

[57] Fed. R. Civ. P. 23(b)(3).

[58] *Id.*

[59] *Id.*

[60] *Amchem*, 521 U.S. at 594.

### D. The issues common to the class predominate over individualized questions.

The predominance enquiry asks whether the issues common to the class are more prevalent or important than the individual issues.[61] Individual questions may exist, but those cannot require such substantial litigation as to frustrate the purpose of aggregation.[62] Generally, courts must characterize issues as common or individual, then weigh the two groupings to determine which predominates.

The common questions here appear significant and likely to be the subject of litigation: whether the defendants operated a single business enterprise, whether the defendants had enough employees to be liable under the WARN Act, whether there were enough employees at a site to qualify under the Act, whether the defendant's notice of termination violated the WARN Act, and whether the defendants have a viable defense. In contrast, individualized assessments exist but are easily determinable: at what location each class member worked or to which location the class member reported, whether each class member was an employee, and the damages to which each class member would be entitled. These issues seem unlikely to be ones that are likely to be the subject of intensive litigation, as the answers to these questions would likely be readily available from the defendants' personnel records.

---

[61] *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

[62] *Id.* (citing Wright & Miller, § 1778, 7AA *Fed. Prac. & Proc.* (3d ed. 2005)).

The defendants did not dispute that the proposed class satisfied predominance and only contested superiority among the Rule 23(b) requirements.

### E. Class litigation is appropriate for WARN Act claims and superior to resolving the disputes in the claims allowance process.

Superiority requires that the class action is the best means to resolve the claims at hand. Class adjudication is inappropriate where class members have an interest in controlling their own litigation, already-pending litigation on the same topic is advanced, there is not a desire or benefit of concentrating claims, or problems would arise managing the case as a class suit.[63] Class actions may be especially proper when claims would cost more to litigate individually than one would expect to recover,[64] or where the number of claims would create an administrative burden on the courts.[65]

Defendants claim that the proposed class action is an inferior method of adjudication compared to the already pending chapter 11 bankruptcy. They argue that the parties did not participate in the substantive litigation before the filing of the bankruptcy petition, then did not participate in post-petition process.[66] Further,

---

[63] Fed. R. Civ. P. 23(b)(3)(A)-(D).

[64] *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 617 (1997).

[65] *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 192 (3d Cir. 2001); *Bonett v. Education Debt Services, Inc.*, No. 02-6528, 2003 WL 21658267, at *4 (E.D. Pa. 2003) ("[A] class action suit is superior to a plethora of individual suits based upon substantially similar factual presentations and legal analysis, particularly where the individual costs of litigation substantially outweigh the maximum potential recovery.").

[66] D.I. 8 at 5-6.

they argue that the plan affords class members the opportunity individually to settle claims instead of litigating collectively and wasting estate assets.[67]

The plaintiff persuasively counters that denying class certification on this basis would require each individual class member to file a claim in the bankruptcy proceeding, creating administrative burden for the courts and many more proceedings to resolve their claims.[68] Further, the cost of litigating an individual's WARN Act claim for 60-days' pay (the recovery for an individual under the WARN Act) may exceed the value of that claim. In cases like this, where the most likely outcome is that claims will never be filed but many claims may be efficiently heard together, class adjudication is superior.[69] Indeed, for precisely these reasons, the resolution of WARN Act claims through the class action mechanism is quite common in bankruptcy cases. The Court is unaware of any bankruptcy court that has denied class certification of a WARN Act claim on the ground that dealing with individual claims through the claims allowance process would be a better way of resolving such matters. This case will not be the first in that regard.

---

[67] *Id.* at 6.

[68] D.I. 13 at 2-3.

[69] *See Amchem*, 521 U.S. at 617; D.I. 13 at 3.

## Conclusion

For the reasons set forth above, the Court concludes that the record in this case supports the certification of a class but does so subject to redefinition orders forthcoming from counsel.

Sincerely,

Craig T. Goldblatt
United States Bankruptcy Judge