B-1

**<u>Exhibit B</u>**

**Bennett Declaration**

10556333.v4

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| PGX Holdings, Inc., *et al.*,[1] | ) | Case No. 23-10718 (CTG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**DECLARATION OF EDWARD J. BENNETT IN SUPPORT OF DEBTORS'
APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING RETENTION
AND EMPLOYMENT OF WILLIAMS & CONNOLLY AS SPECIAL LITIGATION
COUNSEL EFFECTIVE AS OF JUNE 4, 2023 PURSUANT TO SECTIONS
327(E), 328(A), 330, AND 363(B)(1) OF THE BANKRUPTCY CODE**

EDWARD J. BENNETT, being duly sworn, deposes and says:

16.     I am a partner in the law firm of Williams & Connolly LLP ("Williams & Connolly"), which maintains offices for the practice of law at 680 Maine Avenue, S.W., Washington, D.C. 20024.  I am an attorney-at-law, duly admitted and in good standing to practice in the District of Columbia and the Commonwealth of Virginia.  I submit this affidavit in connection with the application of the debtors-in-possession[1] (the "Debtors") in the above-captioned case to retain Williams & Connolly as Special Litigation Counsel to advise the Debtor with respect to certain matters in this chapter 11 case and to provide the disclosures required under section 329 of title 11 of the United States Code (the "Bankruptcy Code"), the rules of this Court, and Rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  PGX Holdings, Inc. (2510); Credit Repair UK, Inc. (4798); Credit.com, Inc. (1580); Creditrepair.com Holdings, Inc. (7536); Creditrepair.com, Inc. (7680); eFolks Holdings, Inc. (5213); eFolks, LLC (5256); John C. Heath, Attorney At Law PC (8362); Progrexion ASG, Inc. (5153); Progrexion Holdings, Inc. (7123); Progrexion IP, Inc. (5179); Progrexion Marketing, Inc. (5073); and Progrexion Teleservices, Inc. (5110).  The location of the Debtors' service address for purposes of these chapter 11 cases is:  257 East 200 South, Suite 1200, Salt Lake City, Utah 84111.

B-2

10556333.v4

**Nature of Williams & Connolly's Retention**

17.      Williams & Connolly will provide services to the Debtor in connection with the case styled *Bureau of Consumer Financial Protection v. Progrexion Marketing, Inc., et al.*, Case No. 2:19-CV-00298-BSJ (the "CFPB Litigation"), currently pending in the United States District Court for the District of Utah (the "District Court), described below, and related matters. In all these activities, Williams & Connolly will work closely with general bankruptcy counsel so as to keep the latter apprised of the legal services rendered by Williams & Connolly.

**CFPB Litigation**

18.      On May 2, 2019, the Bureau of Consumer Financial Protection ("CFPB") filed a complaint against several PGX entities and Lexington Law Firm. The CFPB alleges the following under five counts: (a) certain violations of 16 C.F.R. § 310.4(a)(2), which is the advance fee provision of the Telemarketing Services Rule (the "TSR"), under Count I, and (b) various unlawful deceptive acts or practices, under Counts II-V.  Under Count I of the complaint, the CFPB alleges that the TSR makes it unlawful for the Debtors to bill for credit repair services until (a) the time frame represented for the delivery of all such services has expired and (b) the seller has provided the customer with a credit report demonstrating promised results issued more than six months after such results were achieved.  Under Counts II-V, the CFPB alleges, among other things, that various unaffiliated third parties that refer customers to the Debtors have made misleading statements to such customers about the efficacy of the Debtors' services.  The Debtors deny the allegations in the CFPB Litigation and for years have vigorously defended the lawsuit.

19.      On January 24, 2022, Debtors engaged Williams & Connolly to represent them in the CFPB Litigation.  The Engagement Letter governing that matter is attached as **Exhibit 1**. Williams & Connolly has represented several of the Debtors in various matters since 2019, and successfully defended several Debtors in a federal jury trial in November 2021.

20.     On March 10, 2023, the District Court granted a partial summary judgment against the Debtors on Count I of the CFPB Litigation.  The United States Court of Appeals for the Tenth Circuit entered a temporary stay of the District Court's ruling on March 15, 2023.  The Court of Appeals stay was lifted on April 3, 2023, and on April 6, 2023, the District Court denied Debtors' motion for a stay.  On April 11, 2023, the CFPB filed a Motion for Monetary and Injunctive Relief, Assessment of Civil Monetary Penalties, and Entry of Judgment on Count I.  The District Court held a hearing on the CFPB's motion on June 1 and 2, 2023, and on June 7, 2023, the District Court denied the CFPB's motion without prejudice.

21.     A pretrial hearing in the CFPB Litigation is set for July 10 and 11, 2023.  A trial date has not been set.

### Williams & Connolly's Connections With the Debtor

22.     Since 2019, Williams & Connolly advised and represented various Debtors with respect to litigation and other matters.  The principal focus of the services rendered was representation of the Debtors in litigation, including the CFPB Litigation and litigation and 2021 trial of *Ad Astra Recovery Services, Inc v. John C. Heath Esq et al*. in the United States District Court for the District of Kansas.

23.     In addition to Williams & Connolly's representation of the Debtor stated above, Williams & Connolly has in the past represented, and may currently represent, parties that may have connections to the Debtor.  To comply with section 327(e), Williams & Connolly understands that it must have no interest that is adverse to the Debtors in the CFPB Litigation.  In connection with the Debtors' proposed retention of Williams & Connolly as Special Litigation Counsel under section 327(e) for the CFPB Litigation, Williams & Connolly took the following actions to identify parties that may have connections to the Debtors and Williams & Connolly's relationship with such parties:

a.       Obtained from the Debtor a list of parties-in-interest; and

b.       Compared that list to a list of all clients of Williams & Connolly since 2000.

24.     Williams & Connolly personnel have determined that while Williams & Connolly has or had an attorney-client relationship with several of the parties-in-interest listed by the Debtors, none of those matters is or was substantially related to the CFPB Litigation, and there is no overlap of parties-in-interest who are Williams & Connolly clients  and have a connection to the CFPB Litigation.

### Williams & Connolly's Compensation

25.     Subject to this Court's approval in accordance with sections 330 and 331 of the Bankruptcy Code, such Federal Rules of Bankruptcy Procedure as may be applicable, the rules of this Court, and such other procedures as may be fixed by order of this Court, compensation will be payable to Williams & Connolly on an hourly basis, plus reimbursement of reasonable, actual, and necessary expenses incurred by Williams & Connolly.  Williams & Connolly's hourly rates range from $1,350 - $2,250 for partners, $1,150 - $1,210 for counsel, $720 - 1,210 for associates, and $320 - $510 for paralegals.  These rates are substantially the same as paid by the Debtors, taking into account customary annual adjustments, over the course of the CFPB Litigation.  The rates for contract law clerks and non-lawyer staff such as paralegals, litigation support, and research personnel are set according to their experience and/or skill sets and also will be reflected on Williams & Connolly's statements.  Williams & Connolly charges for time devoted to the representation, including travel time, and it adjusts its hourly rates each January 1.  Williams & Connolly charges for reimbursement of reasonable out-of-pocket expenses including the costs of travel, local counsel, investigators, accountants, consultants, expert witnesses, litigation support vendors, technology providers, court reporting services, messengers, copying, printing as a substitute for copying, telephone and video conferencing, court costs, filing fees, working meals,

10556333.v4

and data storage requirements.  The full terms of Williams & Connolly's engagement are set forth in the firm's January 24, 2022 Engagement Agreement (and the firm's December 16, 2019 engagement agreement incorporated therein), attached as **Exhibit 1**.

26.   The hourly rates that will be charged in this case are Williams & Connolly's standard hourly rates for work of this nature.  The rates are set at a level designed to compensate Williams & Connolly fairly for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses.

27.   This Affidavit is intended to comply with Federal Rule of Bankruptcy Procedure 2016(b).  Williams & Connolly intends to apply to this Court for compensation for professional services rendered in connection with this case.  During the ninety (90) days prior to the Petition Date, Williams & Connolly received $2,154,547.52 from the Debtor or one of its affiliates pursuant to the Engagement Letter, which included a June 2 payment of $662,680.41.  $305,237.87 of the June 2, 2023 payment was applied to cover fees and expenses incurred prior to and including June 4, 2023.  The remaining $357,442.54 is being held in the Firm's accounts.

28.   If retained, Williams & Connolly will apply to the Court from time to time for allowances of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable orders of this Court by submitting fee applications on appropriate notice on a monthly basis.  In light of privilege and confidentiality considerations, however, Williams & Connolly reserves the right to redact its time and expense records and to seek authority from the Court to file such time and expense records under seal.

29.   No promises have been received by Williams & Connolly or by any partner or associate thereof as to compensation in connection with this case other than in accordance with

10556333.v4

B-7

the provisions of the Bankruptcy Code. Williams & Connolly has no agreement with any other entity to share with such entity any compensation received by Williams & Connolly.

30. Neither I, nor Williams & Connolly, nor any partner, associate or other lawyer thereof, insofar as I have been able to ascertain, represents any interest adverse to the Debtor or its estate in the matters regarding which Williams & Connolly is to be engaged.

31. By reason of the foregoing, I believe that Williams & Connolly is eligible for retention by the Debtor pursuant to sections 327(e) and 328 of the Bankruptcy Code and the applicable Bankruptcy Rules.

*/s/ Edward J. Bennett*
Edward J. Bennett

10556333.v4

A-1

## **Exhibit 1**

A-1

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

EDWARD BENNETT
(202) 434-5083
ebennett@wc.com

(202) 434-5000

FAX (202) 434-5029

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

December 16, 2019

## PRIVILEGED & CONFIDENTIAL

<u>Via Electronic Mail</u>

Laura Tanner
Assistant General Counsel
Progrexion Holdings, Inc.
330 N. Cutler Drive
North Salt Lake, Utah   84054

**Agreement for Provision of Legal Services in *Ad Astra Recovery Services, Inc. v. John Clifford Heath, Esq., et al.* (No. 6:18-cv-1145 (D. Kan))**

Dear Laura:

Under this agreement, Williams & Connolly LLP ("we" or "W&C") will undertake to provide legal services to John Clifford Heath, Esq.; John C. Heath, Attorney at Law PLLC d/b/a Lexington Law Firm ("Lexington Law"); Progrexion ASG, Inc.; Progrexion Holdings, Inc.; PGX Holdings, Inc.; Progrexion Marketing, Inc.; Progrexion IP, Inc.; Progrexion Teleservices, Inc. (collectively with Progrexion ASG, Inc.; Progrexion Holdings, Inc.; PGX Holdings, Inc.; Progrexion Marketing, Inc.; and Progrexion IP, Inc., "Progrexion"); Adam C. Fullman, Esq.; and Jeffrey R. Johnson (all collectively, "you"). We appreciate the opportunity to represent you. This agreement establishes the terms of the representation—what you should expect from us, as your lawyers, and what we expect from you, as our client. Please review the terms of this agreement carefully, and please do not hesitate to contact me if you have any questions.

### Scope of the Representation

Williams & Connolly LLP will provide legal services to you in connection with *Ad Astra Recovery Services, Inc. v. John Clifford Heath, Esq., et al.* (No. 6:18-cv-1145 (D. Kan.)). You understand that we are joining the matter at the end of discovery, including meeting any deadlines for discovery and are not responsible for the conduct of past discovery, which is and has been the responsibility of other lawyers.

The attorney-client relationship is limited to representing you, and only you, in connection with the specific matter described above. We do not agree to represent, and we do not owe any

WILLIAMS & CONNOLLY LLP

Laura Tanner
December 16, 2019
Page 2

duty to, any other persons or entities, including affiliates, owners, investors, directors, officers, partners, employees, insurers, third-party payors, indemnitors, or any other persons or entities in which you have an interest, which have an interest in you, or to which you owe any duty. There are no third-party beneficiaries to this engagement.

You agree that your relationships with any of the other persons or entities listed above cannot create a conflict of interests for us. You also agree that, if any such person or entity asserts the existence of a conflict of interests because of any such relationship, you hereby waive that conflict and, if necessary, promise to secure a waiver of the conflict from the relevant person or entity.

This representation does not extend to providing business advice, including advice about any business implications of this representation. In addition, this representation does not extend to providing advice or information related to securities regulation by the United States or any State; corporate transactions or diligence; financial disclosures; or accounting for loss contingencies (other than responding to requests for information as permitted by the American Bar Association's Statement of Policy). It is further agreed that this representation does not include services related to insurance coverage issues or disputes, including such matters as deductibles, exclusions, scope of insurance, reservation of rights, etc. Nor does the representation create any attorney-client relationship with, or duty to, any insurance carrier. For example, it is agreed that we are permitted to be directly adverse to insurance carriers in matters not the same or substantially related to this matter. At the same time, it is important that you explore all possible sources of insurance to determine availability.

**Fees and Expenses**

You agree to pay for our services at the following rates in one-tenth-hour increments: My hourly rate will be $1000; Ed Barnidge, Wendy Zupac, and Connor Winn also will work on this matter, and their rates will be $850, $675, and $575 per hour, respectively. The rates of associates and law clerks are set according to their law-school classes and will be reflected on our statements for legal services. The rates for discovery attorneys, contract attorneys, contract law clerks and non-lawyer staff such as paralegals, litigation support and research personnel are set according to their experience and/or skill sets and also will be reflected on our statements. You agree to pay for all our time devoted to the representation, including travel time. We adjust our hourly rates each January, and you agree to be bound by those adjustments, which will be reflected on our statement for January legal services.

You also agree to pay for our expenses incurred in the course of the representation, including the costs of travel, local counsel, investigators, accountants, consultants, expert witnesses, litigation support vendors, technology providers, court reporting services, messengers, copying, printing as a substitute for copying, telephone and video conferencing, court costs, filing fees, and extraordinary storage requirements. We reserve the right to have you pay directly any invoices from third parties for expenses in excess of $5,000. Because of the importance of

WILLIAMS & CONNOLLY LLP

Laura Tanner
December 16, 2019
Page 3

prompt payment to vendors supporting your legal services, you agree to pay these invoices within 21 days of receipt. In addition, if you or we determine that you should engage third parties to assist us in rendering legal services, you will engage and compensate them directly. While we may advise you regarding the documentation of such engagements, we will not be a party to them.

We will forward monthly to Progrexion ASG, Inc., for allocation between and among you, a confidential statement that will describe our services and list expenses. Payment is due within 30 days. Even if this matter is covered by insurance, you agree to make timely payment to us regardless of the availability of insurance or the timing or extent of insurance reimbursement. To enable us to answer your billing questions accurately, you agree that you will ask any such questions within 30 days of receipt of our statements. Any questions or disputes regarding a portion of a billing statement shall not be cause for withholding payment on the remaining portion due. Amounts not paid within 30 days will carry interest at the annual rate of five percent, compounded monthly.

Although for your convenience we may provide estimates of fees or expenses, any such estimate is subject to the vagaries of litigation or transactional processes and is necessarily inexact. As a result, you agree that we are not bound by such estimates.

### Cooperation and Use of Technology

You will cooperate fully with us and will promptly provide any information that we request or that could be related in any way to this matter. You also agree to locate and preserve all such information, including in electronic form. You acknowledge that we and you will use electronic devices and Internet services to communicate, research, store and transmit or access documents and information. W&C may use technology solutions provided by third parties, including co-location facilities, Software as a Service (SaaS), Infrastructure as a Service (IaaS), and other cloud platforms. These providers are bound by written confidentiality agreements and subject to the firm's supplier management program, which assesses each vendor for its compliance with W&C's data security requirements. The use of such technology poses risks to confidentiality, including the risk of interception by government organizations or others. You acknowledge those risks and consent to the use of such technology.

Please do not communicate with us using computers, other electronic devices, or wireless networks that are controlled or may be accessed by others, and please do not communicate with us over social media or via shared e-mail accounts. TLS (Transport Layer Security) helps protect e-mail by enabling strong encryption of messages while in transit. W&C recommends that Opportunistic TLS be enabled within your e-mail environment. Please contact us if you would like to discuss alternative means of secure communications. In addition, please limit access to your communications with us to those who require access for purposes of your legal interests. W&C has been assessed and certified by an independent and accredited certification firm as compliant with the information security management system requirements in ISO/IEC

WILLIAMS & CONNOLLY LLP

Laura Tanner
December 16, 2019
Page 4

27001:2013 published by the International Organization for Standardization and the International Electrotechnical Commission.

### Privacy and Data Protection

We use information you provide to us for the provision of legal services to you and for related purposes, including legal and regulatory compliance and law practice management. Our use of your information is subject to your instructions, our confidentiality duty, and data protection laws. Please note that our work for you may require us to transfer your information to opposing parties, co-parties, and non-parties such as lawyers, other professional advisers, and expert witnesses who may be aligned with, or adverse to, your interests. We also may need to disclose your information to service providers such as information or document processors.

You may have a right of access under data protection laws to your personal data. To help us maintain accurate data, please let us know if your information needs to be corrected or updated.

If you send us personal data about anyone other than yourself, please ensure that you have received appropriate consents and notices enabling you to transfer that data to us.

### Conflicts of Interests
### and
### Limits of the Attorney-Client Relationship

As a law firm that litigates cases and handles matters across the nation for a wide range of entities and individuals, it is necessary for us to seek your consent to our representation of other clients, both current and future, that may be your adversaries in other litigation; business competitors or counterparties; or otherwise adverse to your interests. Because many of our clients interact with other clients of our firm in many different respects, we often are in a position to undertake new matters only because our clients have consented to and waived any conflict regarding the representation.

As a result, we seek certain consents and waivers of present or future conflicts from our clients, and those terms are set out below. Importantly, the following terms do not allow us in the future to initiate primary litigation or to assert primary claims against you during our attorney-client relationship (except when you are a member of a class or large group or when certain joint representations conclude). In addition, and except as documented regarding a joint representation, even after the conclusion of our representation, the following terms would not permit us to be adverse to you in a matter substantially related to this matter.

*Representations in future matters.* You agree and consent to our future representation of other clients who have legal, financial, business, or other interests directly or indirectly adverse to yours, as long as the matter in which we represent them is not the same matter in which we represent you or substantially related to it. Thus, for example, we will be permitted to defend

WILLIAMS & CONNOLLY LLP

Laura Tanner
December 16, 2019
Page 5

another client in a lawsuit or claim that you or others bring against it. We also will be permitted to pursue counterclaims, cross-claims, or third-party claims against you or others in any matter; to pursue or defend against sanctions requests; to provide advice adverse to your interests; take discovery from you, including as discussed in the next paragraph; and take other action adverse to your interests.

*Discovery.* Because of the nature of litigation, we are often required to seek discovery from third parties, occasionally including our own clients. Similarly, your lawyers in other matters may seek discovery from one or more of our other clients. In these circumstances, you agree to our pursuing or responding to such discovery, including issuing and enforcing document requests and subpoenas; taking and defending depositions or other testimony; cross-examining witnesses including yourself or others; moving to quash subpoenas; and prosecuting or defending sanctions requests.

*Positional conflicts.* We will not advocate a position that is in conflict with your position in this matter before the judge, judicial panel, or other decision-maker having jurisdiction over this matter. In view of the fact that we litigate across the nation for a wide range of clients, however, you agree that we are permitted to undertake advocacy in other matters for other clients or positions, including a position that you may believe is adverse to your interests or position in this matter, as long as we are not doing so before the same judge, judicial panel, or other decision-maker having jurisdiction over this matter.

*Class actions and other mass litigation.* Class actions or cases involving groups of plaintiffs or defendants often raise conflict issues, and we seek your agreement that they do not present the type of conflict that would disqualify us from involvement on the opposite side from you. Thus, you agree that we may be directly adverse to you, including in prosecuting or defending litigation, in the event that you become a member of a litigation class or a member of a group of ten or more plaintiffs or defendants who are adverse to our clients. You waive any conflict of interests that might arise in such a situation, as long as the matter is not the same matter in which we represent you or substantially related to it.

*Transactional and advisory representations.* You also agree and consent to our representing clients in transactional and advisory matters in which we could take action that you may regard as adverse to your interests, including bargaining or drafting transaction terms; imposing legal obligations on you or others; seeking or obtaining regulatory or government approvals; and giving advice to other clients.

*Representations of professionals and advisers.* We represent a wide range of law firms, accounting firms, and other professionals and advisers. You consent to our representation of those professionals and advisers, even if they represent or advise the adverse party in this matter or a substantially related matter and even if they otherwise have or represent interests that are adverse to yours.

WILLIAMS & CONNOLLY LLP

Laura Tanner
December 16, 2019
Page 6

*Representations adverse to third parties.*  We are permitted to undertake representation of any kind in matters not substantially related to this matter even if our client(s) in such matters may be adverse in any respect (including in this matter) to you.

*Mergers and acquisitions.*  Mergers and acquisitions involving clients, opposing parties, or law firms sometimes create new conflicts of interests for existing attorney-client relationships. You agree that any such mergers or acquisitions will not create an attorney-client relationship with any other person beyond those listed above and in addition will not disturb our attorney-client relationship with any other client.  You further agree that you will not seek to disqualify us from any matter, or to make any claim against us, based on an alleged conflict arising from a merger or acquisition.  In addition, if any person or entity asserts the existence of a conflict of interests following a merger or acquisition, you hereby waive that conflict and, if necessary, promise to secure a waiver of the conflict from the person or entity involved.  You agree that the terms of this letter survive any merger or acquisition.

*Disclosure of fact of attorney-client relationship.*  To facilitate our compliance with the Rules of Professional Conduct, including to implement conflict of interests checks, we may need to consult with, or to secure a waiver from, our other clients or prospective clients.  You agree that we are, and will be, allowed to disclose to each such client or prospective client the fact that we have or have had an attorney-client relationship with you.

*Privileged communications with W&C's in-house counsel.*  To facilitate our compliance with the Rules of Professional Conduct and to address our provision of legal services, our lawyers sometimes consult with our Ethics Committee or other in-house or outside counsel.  You consent to any such consultation even if it might be considered adverse to your interests, and you agree that any such consultation will be deemed privileged and confidential and will not be disclosed to you.  You also waive any conflict that may be deemed to exist as a result of such a consultation.

*Confidentiality of information acquired during representation of other clients.*  Just as we will maintain confidentiality regarding information that we acquire during our representation of you, as required by the Rules of Professional Conduct, you agree that neither you nor any other person will have any right to access or use information that we acquire during the representation of other clients.

In addition to the above waiver, because this is a joint representation, W&C and you also must address the following issues.  You understand that in the case of a joint representation W&C owes our full ethical and fiduciary duties to all of you and cannot favor any of you over any other as long as W&C is providing services to all of you.  As a result, this joint representation will be directed toward vindicating your common rights and interests, and you have concluded that this common approach is best for you.  Given that conclusion, the following understandings and agreements will apply:

WILLIAMS & CONNOLLY LLP

Laura Tanner
December 16, 2019
Page 7

- W&C will not be able, during and regarding the joint representation, to make claims against any of you, to elicit evidence against any, and/or to attempt to shift responsibility between or among you. You understand that some of you may have different defenses available to you than are available to others of you, and that if one or more of you succeeds on a unique defense it could result in increasing the exposure of the remaining defendants.

- There will be no secrets between or among you. All information that W&C acquires during the joint representation will be fully available to each of you throughout the case and regardless of whether any conflicts of interests later develop between you. For example, even if a conflict of interests develops and W&C withdraws from representing one or more of you, each of you would continue to have access to all information that W&C acquired while representing all of you.

- A related risk is that in the event of a dispute between you, the courts might not prevent one of you from disclosing or using, in connection with the dispute, confidential attorney-client information communicated by the other during the period of the joint representation. There also is law to the effect that a corporation controls privileged information when there is a joint representation of the corporation and its employees.

- On the other hand, on matters unrelated to any dispute between you, each of you, except as provided below, hereby agrees to preserve the confidentiality of privileged information provided by the other.

- The exception to the previous sentence arises in the case of W&C's withdrawal from the representation of any of you, as provided below. In that event, all information, including confidential information received from the former clients, would be available for use and disclosure on behalf of any remaining clients.

- In light of these several risks, if you have any information regarding this matter that you believe should be kept confidential from your co-client, you should consult with independent counsel before executing this agreement and/or disclosing the information to us. If such information comes to your attention during the course of this matter, you should advise us in writing of that fact, without disclosing the information, so that W&C can determine the appropriate response.

- W&C has discussed whether this joint representation does, or could in the future, present a conflict of interests. To the extent that W&C has identified any present conflicts, each of you has decided to waive them after the opportunity to consult with independent counsel about the wisdom of such a waiver.

WILLIAMS & CONNOLLY LLP

Laura Tanner
December 16, 2019
Page 8

- If a conflict arose in the future, the following steps would be taken.  First, W&C would determine whether the conflict were waivable by current clients under the ethics rules.  If it were and if each of you issued new waivers (again, after the opportunity to consult with independent counsel), the joint representation would continue.  Second, if any of you declined to waive a waivable conflict, we would withdraw from our representation of the non-waiving client and the representation of the waiving client(s) would continue.  Third, if the conflict were not waivable by current clients, W&C would withdraw from the representation of all of you, and each of you would need to secure independent counsel.  W&C's withdrawal could adversely affect your interests.  For example, it could come at a sensitive time in the matter, and it undoubtedly would cost you additional fees to educate new counsel.

- Furthermore, W&C would be permitted to act adversely to the former client(s) in the remainder of the matter and in any substantially related matter.  This may not be in the interest of the former clients for many reasons—not the least of which would be that W&C would be aware of all of the former clients' information related to the matter, including sensitive or confidential information.  W&C would be permitted to use such information for the benefit of the remaining clients and against the interests of the former client(s).

- As further examples, in the remainder of the matter and any substantially related matters, W&C would be permitted to bring claims or defenses; to issue, enforce, or defend discovery, document requests, or subpoenas; to take or defend depositions and/or other testimony; to adversely cross examine a former client and/or its witnesses or representatives; to conduct hearings or trials; and to pursue collection of awards or judgments—all directly against the former client.

- It is agreed that Progrexion and Lexington Law are jointly and severally liable for all of W&C's fees and expenses in this matter and that W&C is permitted to withdraw from representation of each of you in the event that any of the fees and expenses is not paid according to this agreement.

Because this agreement includes waivers of conflicts of interests, we ask that you consult independent legal counsel before executing it.

### Additional Terms of the Representation

Either you or we may terminate this representation at any time for any reason, subject on our part only to the applicable Rules of Professional Conduct.  You agree that, upon conclusion of the representation, we will be entitled to receive any unpaid fees and expenses.  Unless terminated earlier, this representation will terminate automatically upon our sending you our last statement reflecting legal services.  None of the following will extend the representation:  client lists;

WILLIAMS & CONNOLLY LLP

Laura Tanner
December 16, 2019
Page 9

references on our website or elsewhere; internal accounting records; or subsequent statements sent to collect expenses or unpaid balances. Unless we are engaged in other matters for you, termination of this representation will terminate our attorney-client relationship.

After the conclusion of this matter, you agree to cooperate in any return by W&C of your papers and properties. Because of the expense associated with records storage, you agree that W&C may destroy electronic and hard-copy records concerning the matter without further notice seven years after it has concluded. It is further agreed that we retain the discretion during and after the matter to make decisions about the retention or deletion of electronic and hard-copy records concerning the representation, subject only to the applicable Rules of Professional Conduct. It is also agreed that, at all times, including during any disputes that might relate to the representation, we are permitted routinely to over-write or otherwise destroy information on back-up media and systems and not otherwise to retain duplicates. If you request records concerning the matter or your client file during or after the matter, you agree to pay according to our customary fee schedules for the professional time and expenses for gathering, segregating, and producing those materials to you, and we are permitted to retain copies of such records for our files. Regarding insurers or third-party payors, it is agreed that we will not submit to audits by them. In the event of an audit of accounts or files acceptable to both you and us, it is agreed that you will compensate us at our regular hourly rates for our time and expenses related to the audit. After completion of this matter, changes may occur in the law that could affect your rights or responsibilities. Unless you engage us to provide additional services, you agree that we will not have any continuing obligation to advise you or any other person or entity with respect to future developments. In addition, in the event that we are required by law or agree to undertake any post-representation activity related to this representation (such as responding to subpoenas, searching for and producing documents, preparing for testimony and testifying, and performing transition work), you agree to compensate us for our time and expenses at our regular hourly rates.

*     *     *     *     *

You agree that you have come to the District of Columbia to obtain our legal services; that this agreement is formed in the District of Columbia; that any claim or dispute concerning this engagement or our relationship will be governed by the substantive laws of the District of Columbia, without regard to its conflict-of-law rules; and that the District of Columbia Rules of Professional Conduct, including the District's Rules governing choice of law and conflicts of interests, shall apply to this representation. This letter sets forth the complete terms of the agreement between you and us, and no other promises or representations, except for our discussion about the risks of conflicts, have been made or relied upon in reaching this agreement. This agreement cannot be modified in any way without a writing signed by both you and us, and the agreement's terms, including all consents and waivers, are not revocable during your attorney-client relationship with us.

WILLIAMS & CONNOLLY LLP

Laura Tanner
December 16, 2019
Page 10

If you understand and agree to the terms of this agreement, please sign below and return the agreement to me.  Please note, however, that your instructing us or continuing to instruct us on this matter constitutes your agreement to and acceptance of the terms of this letter.  In addition, we do not agree to the application of outside counsel guidelines or procedures that are inconsistent with the terms of this letter or with our obligations to other clients or prospective clients under the applicable Rules of Professional Conduct.  Finally, except as otherwise agreed in writing, the terms of this letter will apply to any ongoing or future engagements by you of W&C.

Again, please do not hesitate to contact me if you have any questions.  We look forward to representing you in this matter.

Sincerely,

Edward J. Bennett

UNDERSTOOD AND AGREED:

**PROGREXION HOLDINGS, INC.**

BY: _____

POSITION: Chief Legal Officer

DATE: _____

**PROGREXION TELESERVICES, INC.**

BY: _____

POSITION: Chief Legal Officer

DATE: _____

WILLIAMS & CONNOLLY LLP

Laura Tanner
December 16, 2019
Page 11

**PGX HOLDINGS, INC.**

BY: _____

POSITION: _chief legal officer_____

DATE: _____


**PROGREXION IP, INC.**

BY: _____

POSITION: _Chief legal officer_____

DATE: _____


**PROGREXION MARKETING, INC.**

BY: _____

POSITION: _chief legal officer_____

DATE: _____

WILLIAMS & CONNOLLY LLP

Laura Tanner
December 16, 2019
Page 12

**PROGREXION ASG, INC.**

BY: _____

POSITION: _Chief Legal Officer_____

DATE: _____


**JOHN CLIFFORD HEATH, ESQ.**

_____

DATE: _____12/19/19_____


**JOHN C. HEATH, ATTORNEY AT LAW PLLC D/B/A LEXINGTON LAW FIRM**

BY: _____

POSITION: _____CEO / President_____

DATE: _____12/19/19_____

WILLIAMS & CONNOLLY LLP

Laura Tanner
December 16, 2019
Page 13

ADAM C. FULLMAN, ESQ.

_____

DATE:_____12/17/19_____


JEFFREY R. JOHNSON

_____

DATE:_____12/19/19_____

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

EDWARD J. BENNETT
(202) 434-5083
ebennett@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

January 24, 2022

## PRIVILEGED & CONFIDENTIAL

**Via Electronic Mail**

Eric Kamerath, Esq.
Sr. Vice President and Chief Legal Officer
Progrexion
257 East 200 South
Salt Lake City, UT 84111

John C. Heath, Esq.
John C. Heath, Attorney at Law PC d/b/a
Lexington Law Firm
2875 Decker Lake Dr.
Suite 200
West Valley City, UT 84119

Re:     Agreement for Provision of Legal Services in *Bureau of Consumer Financial Protection v. Progrexion Marketing, Inc., et al*., No. 2:19-CV-00298-BSJ (D. Utah)

Dear Eric and John:

Pursuant to this agreement, Williams & Connolly LLP ("W&C" or "the firm") will undertake to provide legal services to John C. Heath, Attorney at Law PC d/b/a Lexington Law Firm; PGX Holdings, Inc.; Progrexion Marketing, Inc.; Progrexion Teleservices, Inc.; Creditrepair.com; and eFolks, LLC (collectively, "you") in connection with *Bureau of Consumer Financial Protection v. Progrexion Marketing, Inc., et al*.  It is understood that the attorney-client relationship is limited to these clients and this specific matter.

The terms and conditions of Williams & Connolly LLP's engagement in this matter are the same as the terms and conditions of the firm's engagement by you as set forth in the engagement agreement dated December 16, 2019 (which Creditrepair.com and eFolks hereby adopt), with the exceptions that the subject matter of the current engagement and the firm's role in it are described above and the firm's hourly rates have changed.  Fees for services will be billed at the following rates in one-tenth-hour increments:  My hourly rate is $1,350; Ed Barnidge, Suzanne Salgado, Emma Nino, Daniel Whitely, and Atticus DeProspo, among others, may work on this matter, and their hourly rates will be between $1,125 (for Ed) and  $770 (for Atticus).  The rates of any other attorneys, paralegals and other professionals who provide services will be reflected on W&C's statements.  Hourly rates are adjusted annually by the firm.

WILLIAMS & CONNOLLY LLP

January 24, 2022
Page 2

If all of these terms and conditions are acceptable, could you please endorse this letter and return it to me?  Please note, however, that your instructing us or continuing to instruct us on this matter constitutes your agreement to and acceptance of the terms of this letter and the initial engagement agreement referenced above.  In addition, we do not agree to the application of outside counsel guidelines or procedures that are inconsistent with the terms of our engagement letters with you or with our obligations to other clients or prospective clients under the applicable Rules of Professional Conduct.

Sincerely,

Edward J. Bennett

AGREED AND ACCEPTED:

**CREDITREPAIR.COM, INC.**

BY: _____

POSITION: Senior Vice  President

DATE: 24 Jan 2022


**EFOLKS, LLC**

BY: _____

POSITION: Senior Vice  President

DATE: 24 Jan 2022


**PROGREXION TELESERVICES, INC.**

BY: _____

POSITION: Senior Vice  President

DATE: 24 Jan 2022

WILLIAMS & CONNOLLY LLP

January 24, 2022
Page 3

**PGX HOLDINGS, INC.**

BY: _____

POSITION: _Senior Vice  President_____

DATE: _24 Jan 2022_____

**PROGREXION MARKETING, INC.**

BY: _____

POSITION: _Senior Vice  President_____

DATE: _24 Jan 2022_____

**JOHN C. HEATH, ATTORNEY AT LAW PC D/B/A LEXINGTON LAW FIRM**

BY: _____

POSITION: _____

DATE: _____

WILLIAMS & CONNOLLY LLP

January 24, 2022
Page 3

**PGX HOLDINGS, INC.**

BY:_____

POSITION:_____

DATE:_____

**PROGREXION MARKETING, INC.**

BY:_____

POSITION:_____

DATE:_____

**JOHN C. HEATH, ATTORNEY AT LAW PC D/B/A LEXINGTON LAW FIRM**

BY:_____

POSITION:   CEO/President_____

DATE: January 24, 2022_____